177 N.J. Super. 460 (1981)
427 A.2d 71
GLORIA GABEL AND LEONARD GABEL, HER HUSBAND, PLAINTIFFS-RESPONDENTS,
v.
PETER MANETTO, INDIVIDUALLY AND AS TRUSTEE UNDER AGREEMENT DATED MARCH 7, 1964; AND AURORA MANETTO, HIS WIFE; ANNA PUPPO, WIDOW; ELEANOR GIANNETTI, UNMARRIED; SYLVIA BRAELOW, EXECUTRIX OF THE ESTATE OF BENJAMIN D. BRAELOW; AND ANNA FENWICK, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted January 13, 1981.
Decided February 9, 1981.
*461 Before Judges FRITZ, POLOW and JOELSON.
George Del Marmo, for appellants.
*462 Kaplan & Steir, for respondents (Harold L. Kaplan of counsel and on the brief).
The opinion of the court was delivered by JOELSON, J.A.D.
The question in this case is whether an express inter vivos trust of real property can be revoked orally. It is an issue which apparently has not been decided in this State. The trial judge ruled that such an inter vivos trust cannot be revoked orally. We disagree and reverse.
Joseph Manetto executed a trust agreement on March 7, 1964 relating to rental property owned by him in Bloomfield. On the same day he executed a bargain and sale deed conveying the same property to his son, Peter Manetto, as trustee. Both the trust agreement and the deed were recorded several weeks later in the Essex County Register's Office. The trust agreement, which was specifically referred to in the deed, provided that the settlor and his wife were each to be paid one-half of the net income from the property during their joint lives, and that all of the net income should be paid to the surviving spouse in the event of the death of either of them. After the death of both spouses, the property was to be sold and the proceeds to be distributed equally to the settlor's four children: Peter Manetto, Anna Puppo, Eleanor Gianetti and Gloria Gabel. (Gloria Gabel was settlor's child by a second marriage.)
Paragraph 8 of the trust agreement provided as follows:
Settlor may amend, alter or revoke this Trust in whole or in part during his lifetime. Upon the death of Settlor, this Trust shall become irrevocable. The power to amend, alter or revoke herein retained by Settlor may be released by an instrument in writing executed by Settlor for such purpose and delivered to Trustee. Upon delivery of such instrument, this Trust shall become irrevocable.
The settlor died in November, 1976, his spouse having died in 1974 at a time when the husband and wife were estranged. This action was instituted by Gloria and her husband after her father's death. It sought either partition of the property or that *463 the property be sold and the proceeds be divided pursuant to the trust.[1] All defendants other than the judgment creditors filed a joint answer, alleging that the trust had been revoked. They also counterclaimed, seeking an order that each child except Gloria should be declared to have a one-third interest in the property pursuant to a will made by their father on September 23, 1975. This will left testator's property, real and personal, in equal shares to the children of his first marriage, but only $2,000 in cash to Gloria. At the time he made the will and at the time of his death, he owned no other real property.
Legal authorities have stated generally that where no method of revocation is specified in the instrument creating an inter vivos trust, it may be revoked by any method which sufficiently proves the intention of the settlor to revoke it. Restatement, Trusts 2d, § 330, comment i at 138 (1959); 4 Scott on Trusts (3 ed. 1967), § 330.7 at 2605; Bogert, Trusts and Trustees (2 ed. 1962), § 1001 at 494; 76 Am.Jur.2d, Trusts, § 78 at 327; 89 C.J.S., Trusts, § 91a at 917. However, plaintiffs contend that since the res of the trust was real property, any revocation of the trust was required to be in writing. In this respect, plaintiffs rely on the Statute of Frauds, particularly N.J.S.A. 25:1-2 and N.J.S.A. 25:1-3. We find these statutes inapplicable.
N.J.S.A. 25:1-3 provides that "all declarations and creations of trust ... in real estate shall be manifested or proved by some writing...." Since we are dealing with the revocation of a trust rather than its declaration and creation, the statute does not apply. N.J.S.A. 25:1-2 provides that no estate or *464 interest in real estate "shall be assigned, granted or surrendered unless it be by deed or note in writing...." We do not regard the revocation of a trust interest in real estate as an assignment, grant or surrender of that interest. We are dealing with an alleged extinguishment of an interest by the original grantor of that interest. The case relied upon by plaintiffs, Moses v. Moses, 140 N.J. Eq. 575 (E. & A. 1947), is inapposite. It dealt with an unenforceable oral express trust of land and a consequent constructive trust. The court held that in those circumstances the purported oral surrender by a cestui of a beneficial interest was ineffectual. In our view, that is far different from the extinguishment of a concededly revocable trust by the settlor.
Plaintiffs contend, further, that even if the statute of frauds does not govern, paragraph 8 of the trust agreement quoted above requires that any revocation must be in writing. They draw this conclusion from the provision in paragraph 8 that "the power to amend, alter or revoke herein retained by the settlor may be released by an instrument in writing...." While acknowledging that this requirement does not apply to the revocation itself but only to the power to revoke, they state in their brief that they "believe it compelling to believe that if the settlor required formality for the release of the power of revocation there should be no less formality for the revocation itself." We believe that more reasonable is the argument to the contrary, that since the settlor required that the release of his power to amend, alter or revoke be accomplished in writing, but did not so require as to amendment, alteration or revocation itself, his intention to retain the power to make the change orally is manifest. An affirmative expression ordinarily implies a negation of any other alternative. Expressio unius est exclusio alterius. Moses, supra at 583. The settlor so prized his right to amend, alter or revoke that he directed that such power could only be ceded in writing, but that does not negate his intention to be able orally to effect these changes.
*465 Next, plaintiffs assert that under a concept of "equal dignity," a written instrument should not be permitted to be revoked unless the revocation is in writing also. However, there is no general prohibition against parol revocation of an agreement in writing. Thus, someone who makes a written offer to enter into a contract may legally revoke that offer by oral notice to the offeree, before acceptance. 1 Corbin, Contracts, § 39 at 164 (1963). A competent lawyer would no doubt advise a revocation in writing in such case to avoid difficulties of proof. Yet the oral revocation of the written offer would be effective if legally proved.
We are not unmindful of the fact that in the case before us the agreement of trust and the deed to the trustee were recorded. However, we are not called upon to decide the rights of anyone who might have relied on these recorded documents to his detriment. We are rather considering the relative rights of parties whose status would have been the same whether or not the documents had been recorded. The records can be corrected if necessary.
The trial judge tried this nonjury case to conclusion after hearing all the evidence. However, in his written opinion he dealt only sketchily with the facts because he ruled as a matter of law that an oral revocation of the inter vivos trust could not be legally accomplished. In view of our disagreement with the judge on this question of law, we remand the matter. The burden of proof of revocation shall be on the party asserting it, and must be proved by clear and convincing evidence.
We base our requirement respecting the canon of proof on an analogy with Aiello v. Knoll Golf Club, 64 N.J. Super. 156 (App. Div. 1960) where a claim was made of a parol gift of realty under circumstances where the grantor was alleged to be estopped from pleading the statute of frauds because of the grantee's expenditures for improvements to the property. We pointed out in that case that the requirement of proof by clear and convincing *466 evidence represented a compromise between the strong policy of the statute of frauds and equity's paramount goal of fair disposition, and was necessary to forestall trumped-up prayers for relief. Id. at 161 and 164. In order to dispose fairly of the matter before us, we have ruled that the written inter vivos trust could have been revoked orally despite the fact that the trust res was real estate. However, in order to insure to the greatest extent possible against a fabricated claim of revocation, we adopt a burden of proof "commensurate with the dimensions of fraud perceived in the particular case or situation." Merenoff v. Merenoff, 76 N.J. 535, 554 (1978).
The judge in reaching his determination will, of course, consider all the evidence including the alleged acrimony between Gloria and her father, the testimony that the lawyer physically destroyed the original trust agreement in the presence of the settlor and the trustee, the lawyer's disclaimer of any such incident, and all other relevant evidence. However, the will itself should not be considered to be a revocation of the trust. Since a will does not take effect until after a testator's death, it is not the proper instrument to revoke a trust when the power to do so is an inter vivos power. In re Kovalyshyn's Estate, 136 N.J. Super. 40 (Cty.Ct. 1975); In re Henning's Estate, 116 N.J. Super. 491 (Ch.Div. 1971). Fidelity Union Trust Co. v. Hall, 125 N.J. Eq. 419 (Ch. 1939). Thus, the trial judge's consideration of the will should only be with regard to any light it may cast upon the underlying question of whether the settlor revoked the trust prior to his death.
Reversed and remanded for further proceedings in accordance with the foregoing. In view of the fact that we have applied law not heretofore established in New Jersey, we consider it to be only fair that either party may supplement the record with additional proofs directed towards an application of that law. We do not retain jurisdiction.
NOTES
[1] Sylvia Braelow, executrix of the estate of Benjamin D. Braelow, was made a defendant because Benjamin Braelow obtained a judgment against Eleanor Giannetti in 1969. Anna Fenwick was made a defendant because she obtained a judgment against Eleanor Giannetti in 1978. However, no relief was sought against these defendants in the complaint, and no reference made to them in the briefs.