[No. 12591–5–I. Division One. September 3, 1985.]

JOHN POLTZ, *as Executor and Personal Representative, Respondent,* v. JOE TYREE, ET AL, *Appellants.*

*Schweppe, Krug & Tausend* and *Fredric Tausend,* for appellants.

*Payne & Verzani* and *Frank W. Payne,* for respondent.

SCHOLFIELD, A.C.J.—Joe and Shirley Tyree appeal a judgment quieting title to real property in John Poltz, personal representative of the estate of Jessie M. Casler. Tyree alleges the court erred by finding and enforcing an oral revocation of a written trust involving real estate. We affirm.

On June 16, 1970, Jessie M. Casler executed a declaration of trust and a quitclaim deed, both of which were recorded on the same day. In the declaration of trust, she designated

herself as trustee of the described real estate to be held in trust for the benefit of "Joe W. Tyree (my great–nephew)". The trust document provided that upon her death, her successor trustee was to transfer the property to the beneficiary. She reserved the right to revoke the trust without notice to or consent of the beneficiary, and without any requirement that the revocation be in writing. Sale of the property operated as a revocation of the trust. She also reserved the right to encumber the property and to receive all rents or other income from the property and dispose of it in her sole discretion. In the quitclaim deed, Casler conveyed the property to herself as trustee under the terms of the trust instrument described above.

On June 15, 1970, Casler executed a will, leaving "the bulk of my estate" to Tyree. In October 1974, she expressed unhappiness with the will and executed a new will, leaving Tyree only $1,000. In a December 15, 1975 revision of her will, she made the Watchtower Bible and Tract Society the residuary beneficiary. On May 11, 1976, she reduced the bequest to Tyree to $5 and expressed to her attorney much dissatisfaction with Tyree and another great–nephew. On the same day, she executed an affidavit explaining her unhappiness with her great–nephews.

After Casler's death in 1981, a partial summary judgment was entered December 10, 1981, holding the trust was a valid trust. The summary judgment proceeding did not address the question of revocation of the trust.

At a bench trial regarding revocation, substantial testimony was presented of Casler's expressions of dissatisfaction with her great–nephews. However, she never mentioned the trust to her attorney. The trial court found:

> The court finds that it was Jessie Margaret Casler's intent to revoke the trust agreement of June 16, 1970. Such revocation was by her oral statements to friends and by the series of Wills that she made and in particular, the Will of May 11, 1976 and the affidavit executed that same date. Such actions manifested the intent to revoke the trust.

Finding of fact 17.

 Tyree contends the evidence is insufficient to support the trial court's finding of an oral revocation of the trust. We reject this contention. The trial court's finding of an oral revocation is supported by substantial evidence and will not be disturbed. *Ridgeview Properties v. Starbuck,* 96 Wn.2d 716, 638 P.2d 1231 (1982).

Tyree contends the execution of the trust and quitclaim deed had the effect of conveying an interest in real property to Casler, as trustee, and Tyree, as beneficiary, and that revocation of the trust is a conveyance of an interest in real property which must be in writing in order to comply with RCW 64.04.010[1] and .020.[2]

 In making this argument, Tyree relies upon such cases as *Diel v. Beekman,* 7 Wn. App. 139, 499 P.2d 37 (1972) and *Zucker v. Mitchell,* 62 Wn.2d 819, 384 P.2d 815 (1963), holding that a writing is required to create an express trust in real estate. Logically, the requirement of a writing must be based, at least in part, on the view that the trust instrument conveys an interest in real estate to the beneficiary. The Washington cases cited all involve creation of a trust. We know of no Washington cases holding that a writing is required in order to revoke a trust involving real estate. Although the Washington cases requiring a writing to create a trust in real estate impliedly adopt the theory that a beneficiary acquires an equitable interest in real estate, it does not follow that in every case, a writing is required to revoke the trust and thereby nullify the beneficiary's rights under the trust.

Our examination of the trust instrument in this case dis-

---

[1]RCW 64.04.010 provides, in part:

"Every conveyance of real estate, or any interest therein, . . . shall be by deed: . . ."

[2]RCW 64.04.020 provides:

"Every deed shall be in writing, signed by the party bound thereby, and acknowledged by the party before some person authorized by this act to take acknowledgments of deeds."

closes that it gave no rights or benefits to the beneficiary other than the right to receive the property if Casler died with the trust still in effect. Casler retained all rights in respect to the property, including the right to receive any income from the property and use it as she wished, the right to mortgage the property, the right to use the property, and the right to sell the property, in which case the sale operated as an automatic revocation of the trust. Thus, the trust instrument was primarily testamentary in effect and appears to have been intended to accomplish nothing more than transfer of title upon death of the settlor, without necessity of formal probate proceedings.

In *Barnette v. McNulty,* 21 Ariz. App. 127, 516 P.2d 583 (1973), the Arizona court was presented with a very similar fact pattern. The trust property involved corporate stock, and the trust document gave the settlor full power to revoke the trust without the consent of or giving notice to the beneficiary. The settlor made various statements indicating dissatisfaction with the trust naming his wife as beneficiary and expressing his desire that his son inherit the corporate stock. A will was later executed to accomplish that result. Although there was no formal termination of the trust, the court found from the settlor statements an intention to revoke the trust and a judgment revoking the trust was affirmed.

Although *Barnette* involved personal property, *Gabel v. Manetto,* 177 N.J. Super. 460, 427 A.2d 71 (1981) involved real property and a New Jersey statute providing that "'all declarations and creations of trust . . . in real estate shall be manifested or proved by some writing. . . .'" *Gabel,* at 463. The New Jersey court disposed of the contention that the revocation of a trust in real estate had to be in writing, stating at pages 463–64 as follows:

> Since we are dealing with the revocation of a trust rather than its declaration and creation, the statute does not

apply. *N.J.S.A.* 25:1–2 provides that no estate or interest in real estate "shall be assigned, granted or surrendered unless it be by deed or note in writing. . . ." We do not regard the revocation of a trust interest in real estate as an assignment, grant or surrender of that interest. We are dealing with an alleged extinguishment of an interest by the original grantor of that interest.

In addition, 4 A. Scott, *Trusts* § 330.7 (3d ed. 1967) states:

> Where the settlor reserves power to revoke the trust but no method of revocation is specified, the power of revocation can be exercised in any manner which sufficiently evidences the intention of the settlor to revoke the trust.

(Footnote omitted.) *See also* Restatement (Second) of Trusts § 330, comment *i* (1959).

We conclude that there is no legal impediment to an oral revocation of the trust involved in this case. When the trust was revoked, the deed was rendered a nullity. At the time of the revocation, Tyree did not hold an interest in real estate requiring reconveyance by deed back to the settlor. He held, at most, a mere expectancy or an inchoate interest,[3] which was extinguished by the revocation of the trust.

The trust involved in this case is an "empty" or "naked" trust, conveying no present rights or benefits to the beneficiary and, therefore, this case is not comparable to a case involving a trust document which conveys substantial rights and benefits to the beneficiary at the time of its execution.

On the facts of this case, we conclude that the settlor had the power to revoke the trust orally and that the court's finding of the intention to do so is supported by substantial evidence.

---

[3]An "inchoate interest" is "[a]n interest in real estate which is not a present interest, but which may ripen into a vested estate, if not barred, extinguished, or divested." Black's Law Dictionary 904 (4th rev. ed. 1968).

The judgment is affirmed.

RINGOLD, J., and HOPP, J. Pro Tem., concur.

Review denied by Supreme Court November 8, 1985.