In the Matter of the LAST WILL AND TESTAMENT OF Gay Dawn TAMPLIN.

No. S–9830.

Supreme Court of Alaska.

June 7, 2002.

Jan Van Dort, Juneau, for Appellant Larry Daly.

BethAnn Boudah Chapman, Faulkner Banfield, Juneau, for Appellee Gayleen Hays.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

Gay Dawn Tamplin died in October 1998 leaving a will executed in May 1998 and a revocable *inter vivos* trust created in 1993. The 1993 trust was funded solely by her condominium and the 1998 will purported to leave the condominium to her partner, Larry Daly. The superior court held that the will did not revoke the trust or withdraw the condominium from the trust and that the condominium was transferred to Gay Dawn's daughter, Gayleen, on Gay Dawn's death under the terms of the trust. We affirm the decision of the superior court and hold that in the circumstances of this case a will cannot revoke an *inter vivos* trust.

## II. FACTS AND PROCEEDINGS

### A. Facts

Gay Dawn Tamplin died on October 6, 1998. Six years earlier, in October 1992, Gay Dawn met Larry Daly. Sometime shortly after meeting, Gay Dawn and Larry began living together in Gay Dawn's Spaulding Beach condominium located at Auke Bay. Gay Dawn and Larry continued to live together in the condominium until Gay Dawn's death.

Gay Dawn established a revocable *inter vivos* trust on September 20, 1993. The trust was initially funded solely by the condominium that Gay Dawn owned. Gay Dawn deeded the condominium to the trust by quitclaim deed. The deed was recorded in the Juneau recording district on October 1, 1993. Gay Dawn was the sole beneficiary of the trust during her lifetime and her daughter, Gayleen Hays, was the trustee. Mark Hays, Gayleen's husband, was the alternate trustee if Gayleen was unable to perform the trustee's duties.

Gay Dawn reserved the right to make additional contributions to the trust, or to withdraw all or any part of the properties from the trust, during her life. The trust did not specify a means of revocation. Upon Gay Dawn's death, the trust was to terminate and the property was to go to Gayleen if she was living. If Gayleen was not living, the property was to be distributed in the following order based on who was living: Gayleen's daughter, Serina; Mark; and then Larry.

In May 1998 Gay Dawn was diagnosed with pancreatic cancer and was not expected to live much longer. While in the hospital on May 9, 1998, Gay Dawn drafted a document titled "To whom it may concern my Last Will & testament." In the will, Gay Dawn expressed her love for Larry and purported to leave him the condominium. Gay Dawn also expressed her love for Gayleen, Mark, and Serina and her wish that the family decide what to do with her personal belongings. The will does not mention the trust and does not attempt to expressly withdraw the condominium from the trust. Gay Dawn signed the will twice; the will was also signed by a notary public. The will was apparently not shown to Mark or Gayleen until sometime in September 1998, shortly before Gay Dawn's death.

Gayleen gave Larry notice to quit the condominium on November 4, 1998, which Larry did. In March 1999 Larry filed a *lis pendens* against the condominium to keep Gayleen from selling it. The *lis pendens* was based on his belief that the condominium was a probate asset that he was entitled to under the May 1998 will.

### B. Proceedings

In March 1999 Larry petitioned the superior court for formal probate of Gay Dawn's May 1998 will and appointment of Larry as personal representative. Gayleen filed an opposition to Larry's petition, claiming that the May 1998 will was invalid because Gay Dawn lacked testamentary capacity and Larry exerted undue influence upon Gay Dawn. Gayleen also asked the court to appoint her as the personal representative of the estate and asserted various counterclaims against Larry. Finally, Gayleen filed a motion to declare the condominium an asset of the trust and for removal of the *lis pendens* filed by Larry against the condominium. Larry opposed Gayleen's motion to declare the condominium an asset of the trust and filed a cross-motion for summary judgment.

The superior court held that Gay Dawn's 1998 will was not a sufficient act to revoke or modify the trust. The superior court found that the condominium was transferred to the trust by quitclaim deed and that the deed was recorded in the Juneau recording district. A transfer of this nature, the superior court held, required "more than a testamentary wish in a will to reconvey" the condominium to Gay Dawn. To remove the condominium from the trust, the superior court stated that an express wish to revoke the trust or a request to the trustee to reconvey the land was needed. The superior court reasoned that a person cannot pass on what she does not own. Since the will became effective at death but the trust gave Gay Dawn only a life interest, she no longer owned the condominium when the will became effective. The superior court held that there was no legal act that evidenced Gay Dawn's intent to remove the condominium from the trust. As a result of this ruling, the condominium passed to Gayleen.

Larry appeals.

### III. STANDARD OF REVIEW

█ Whether Gay Dawn's 1998 will revoked her trust or withdrew the condominium from the trust is a question of law. We exercise our independent judgment on questions of law.[1] We "adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[2]

### IV. DISCUSSION

**The Superior Court Did Not Err in Finding that the 1998 Will Did Not Revoke the Trust or Withdraw the Condominium from It.**

Larry argues that the superior court erred in finding that Gay Dawn's 1998 will did not

---

1. *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

2. *Id.*

revoke the trust.[3] Larry contends that the superior court should have focused on giving effect to the decedent's final expression of intent as to the disposition of the condominium. Larry states that "the last, clear statement of donative intent should be given effect regardless of whether that statement is found in a trust, will or other legally valid document." In support of this argument, Larry relies on AS 13.06.010.[4]

■ We have defined a trust as " 'a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it.' "[5] Specifically, an *inter vivos* trust is a "trust that is created and takes effect during the settlor's lifetime."[6] The settlor is the person who creates the trust.[7] A trust is revocable by the settlor "if and to the extent that by the terms of the trust he reserved such a power."[8] We have not previously ruled on the appropriate means of revocation of an *inter vivos* trust when no means are specified by the terms of the trust document.

■ Here, the parties do not dispute the validity of the trust or that it was revocable by Gay Dawn. It is also undisputed that the trust terminated on Gay Dawn's death. The validity of the will is not contested in these proceedings. The sole question here is whether the condominium is part of Gay Dawn's probate property under the 1998 will or remains in the trust.[9]

Courts of other states have found that a will cannot terminate a trust where the power to revoke the trust ends with the settlor's death.[10] In *Ridge v. Bright*,[11] Lottie Roscoe McMillan created a trust funded by stock for her benefit during her lifetime and then the stock vested absolutely in her niece, Virginia Bright, after her death.[12] McMillan subsequently executed a will that specifically devised her automobile to Bright and also made Bright a residuary beneficiary of the will. The executor of McMillan's will challenged the trust, contending that it was revoked by gifts made to Bright in the will. The North Carolina Supreme Court held that a will does not become effective until death and, unless the trust instrument provides otherwise, the power to revoke a trust must be exercised before the death of the settlor.[13] Therefore,

---

**3.** Although the superior court found both that "the 1998 will did not revoke the Trust [and did not] serve to withdraw the condominium from the Trust," the analysis of these two findings is the same for two reasons: (1) Larry did not present any separate arguments for withdrawal, and (2) the trust is funded solely by the condominium, which means that withdrawing the condominium would be tantamount to revoking the trust.

**4.** AS 13.06.010 states in relevant part:
   (b) The underlying purposes and policies of AS 13.06–AS 13.36 are to
    . . . .
   (2) discover and make effective the intent of a decedent in distribution of the decedent's property. . . .

**5.** *Alaska State Employees Ass'n v. Alaska Pub. Employees Ass'n*, 825 P.2d 451, 459 (Alaska 1991) (quoting RESTATEMENT (SECOND) OF TRUSTS § 2 (1959)).

**6.** BLACK'S LAW DICTIONARY 1516 (7th ed.1999).

**7.** RESTATEMENT (SECOND) OF TRUSTS § 3 (1959).

**8.** *Id.* at § 330.

**9.** Larry expressly abandons the issues involving the award of partial judgment and attorney's fees in his brief.

**10.** *See Gabel v. Manetto*, 177 N.J.Super. 460, 427 A.2d 71, 74 (1981) (stating that "[s]ince a will does not take effect until after a testator's death, it is not the proper instrument to revoke a trust when the power to do so is an inter vivos power"); *Barnette v. McNulty*, 21 Ariz.App. 127, 516 P.2d 583, 586 (1974) (stating that "the trust instrument stated that revocation could occur only during the lifetime of the settlor and since the will he executed did not take effect during his lifetime, we cannot consider the provisions of the will as a revocation of the trust"); *cf. Mayer v. Tucker*, 102 N.J. Eq. 524, 141 A. 799, 800 (1928) (holding that there was not sufficient evidence of settlor's intent to revoke, but, even if there was, a trust could not be revoked by the will because the right had to be exercised during the life of the settlor).

**11.** 244 N.C. 345, 93 S.E.2d 607 (1956).

**12.** *Id.* at 608.

**13.** *Id.* at 613.

McMillan's devise to Bright in the will did not revoke the trust.[14]

The Alaska legislature has followed the same path and, in 2000, decided that it is the policy of this state not to allow a will to revoke a trust. In AS 13.36.340,[15] the legislature rejected the relatively more lenient trust revocation approach of the Uniform Trust Code [16] and provided that the writing used to revoke a revocable trust must be "other than a will." [17]

In light of the legislature's enactment of AS 13.36.340, we adopt the rule that a will cannot revoke a trust where the trust does not so provide. It is true that AS 13.36.340 does not control this case because the statute was enacted in August 2000, long after the execution of Gay Dawn's 1998 will and her October 1998 death.[18] However, through the statute, the legislature has made it clear that it is the policy of this state not to allow revocation of a revocable trust by will. In other cases, we have adopted a statutory approach as the common law to govern the interim period before the statute becomes effective.[19] By doing this, we have tried to maintain consistency and predictability in the law governing situations such as this, where the common law rule appears consistent with the legislature's subsequent policy declaration, or where the common law rule is unsettled. We find it appropriate to adopt the statutory rule in this case in order to provide continuity between the common law and AS 13.36.340. ·

## V. CONCLUSION

We AFFIRM the superior court's ruling that the 1998 will did not revoke the *inter vivos* trust or serve to withdraw the condominium from the trust.

14. *Id.* at 613.

15. AS 13.36.340 states in relevant part:
(a) A trust that is revocable by the settlor may be modified or revoked in whole or in part by
(1) substantial compliance with a method of modification or revocation provided in the trust instrument; or
(2) a writing, other than a will, signed by the settlor and delivered to the trustee during the lifetime of the settlor, except that, if the trust instrument expressly makes the method of revocation provided in the trust instrument the exclusive method of revocation, the trust may not be revoked under this paragraph.

16. The Uniform Trust Code has never been adopted in Alaska.

17. AS 13.36.340(a)(2). The only exception to this rule is where the trust document specifically allows for revocation by will. AS 13.36.340(a)(1). That situation is not presently before us.

18. AS 01.10.090 states that "[n]o statute is retrospective unless expressly declared therein."

19. *See Hansen v. Stroecker,* 699 P.2d 871, 874 (Alaska 1985) (quoting Massachusetts Supreme Court's statement that "[a]lthough the statute operates prospectively, the Legislature has clearly expressed the policy of the Commonwealth and we feel that this court is justified in applying that policy to the provisions under consideration" in deciding whether the wait and see approach should be applied to the rule against perpetuities); *Whittlesey v. State,* 626 P.2d 1066, 1068 (Alaska 1980) (holding that new criminal sentencing standards not in effect at the time of the crime were "useful and relevant in the determination of an appropriate sentence under the present circumstances" as the most recent expression of legislative policy).