[No. 48897-0-I. Division One. October 14, 2002.]

*In the Matter of the Estate of* ROBERT J. FURST.

ROSEMARY SUNDERLAND, *as Trustee, Appellant*, v. KATHRYN WHITCOMB, *Respondent*.

*Mark C. Vohr* and *William A. Olson* (of *Aiken, St. Louis & Siljeg, P.S.*), for appellant.

*Joseph Taylor Hunt* and *Laurason Taylor Hunt*, for respondent.

BAKER, J. — Because we determine that a revocable living trust was not effectively revoked by the trustor when he executed a later last will and testament, we reverse and remand.

## I

Robert J. Furst created and funded a living trust, the Robert J. Furst Revocable Trust. He transferred all of his assets into the trust, except for his personal effects, including a valuable diamond ring and $13,000 in United States savings bonds. He did so through the services of an attorney, who discussed the process with him in detail. The attorney testified that Mr. Furst clearly understood that his assets needed to be transferred to the trust and would remain trust property unless the trust was specifically

revoked in writing and he transferred the assets out of the trust.

At the same time, Furst executed a pour-over will, by the terms of which he made certain specific bequests of nontrust assets to his niece, RoseMary Sunderland, and bequeathed the rest and residue of his estate to the trustee of his revocable trust created on the same date.

Over a year later, Furst executed a new will which was prepared by a different attorney. He did not advise this attorney of the existence of the trust, nor did he notify the former attorney of the new will. This will revoked all former wills but did not mention or purport to revoke the trust. The will directed that all estate and inheritance taxes payable with respect to property not passing under the will should be the responsibility of the person receiving it. The will then disposed of the "rest, residue and remainder of my estate" by dividing it equally between Sunderland and Kathryn Whitcomb.

After the will was executed, Furst continued to receive statements from the trust depositories which indicated that most of his assets remained in trust, but he made no attempt to transfer any trust assets out of trust prior to his death several months later.

Beneficiaries under the trust and under the residuary disposition of the final will were entitled to receive significantly different distributive shares. Sunderland, in her capacity as successor trustee of the trust and personal representative of the estate, petitioned to have the trust assets declared nonprobate assets to be distributed pursuant to the terms of the trust. Whitcomb contested, seeking to have the trust declared revoked and its assets distributed according to the terms of the will. On cross motions for summary judgment, the superior court granted Whitcomb's motion, denied Sunderland's motion, and declared that the trust had been revoked. Sunderland appeals.

The trial court reasoned that there was a latent ambiguity in the will because that document failed to mention the

trust, yet purported to bequeath a residuary estate that did not have any nontrust assets in it when the will was executed. So, the court looked to extrinsic evidence to determine the intent of the testator, which had not been expressed in the will, and determined based thereon that the testator had intended to revoke the trust. The court then ruled as a matter of law that Furst did revoke the trust by later executing the new will. We disagree, and reverse and remand for entry of summary judgment in favor of Sunderland.

## II

■■ First, we disagree with the court below that any latent ambiguity existed in the final will. Execution of a new will and testament effectively revokes a prior will, but it has no legal effect to dispose of property until the testator's later death.[1] Thus, the standard reference to "the rest, residue and remainder of my estate" does not create an ambiguity merely because at the time of executing the will there are few if any nontrust assets in the testator's estate. A general residuary gift is ineffective to dispose of nonprobate assets passing outside of a will.[2] Therefore, the provisions of the trust and those of the final will can logically coexist, with no apparent or necessary inconsistency.

■ Article II of the Revocable Trust Agreement reserved to the trustor the right to amend or revoke the agreement, in whole or in part, by instrument in writing delivered to the trustee. Where the trust instrument specifies the method of revocation, only that method can be used.[3] Robert Furst was during his lifetime both the trustor and trustee. The issue is whether by executing his later will,

---

[1] RCW 11.12.040(1)(a); *In re Estate of Catto*, 88 Wn. App. 522, 538-39, 944 P.2d 1052 (1997) (citing *Allen v. Dillard*, 15 Wn.2d 35, 53-54 129 P.2d 813 (1942)).

[2] RCW 11.11.020(2).

[3] *In re Estate of Button*, 79 Wn.2d 849, 852, 490 P.2d 731 (1971).

Furst delivered to himself an instrument in writing which revoked the trust.[4]

[4, 5] Relying principally on *Poltz v. Tyree*,[5] Whitcomb argues that the trust created by Furst was an "empty" or "naked" trust which, because it reserved the power to revoke the trust without a specific method of revocation, the power could be exercised orally, by will, or in any manner which sufficiently evidenced the intent of the trustor to revoke the trust. *Poltz* is distinguishable. The trust document in that case reserved the power of revocation to the trustor but prescribed no particular method for doing so.[6] The trust created by Furst similarly reserved the power to revoke, but it specified the manner of doing so: by written instrument delivered to the trustee. A later will could accomplish that result if, by its terms, it purported to revoke the trust. But the will at issue did not purport to revoke the trust. It did not even mention the trust. Including a residuary gift in the will was a testamentary act, not a revocatory act.

■ We note also that since 1998, RCW 11.11.020 directs the manner of changing the beneficiaries of a nonprobate asset by an express revocatory act in a later will. The procedure set forth in the statute was not followed when Furst executed his final will. The statute provides further, in part, that:

> A general residuary gift in an owner's will, or a will making general disposition of all of the owner's property, does not entitle the devisees or legatees to receive nonprobate assets of the owner.[7]

The reasoning employed by the trial court improperly circumvented this section of the statute. The statute was intended to reduce or eliminate uncertainty regarding the

---

[4] *Button*, 79 Wn.2d at 852.

[5] 41 Wn. App. 695, 705 P.2d 1229 (1985).

[6] *Poltz*, 41 Wn. App. at 696.

[7] RCW 11.11.020(2).

effect of a subsequent will on the transfer of property pursuant to an inter vivos trust. The effect of the decision below is to perpetuate the very uncertainties designed to be alleviated by the statute.

Reversed and remanded for entry of judgment in favor of Sunderland.

BECKER, C.J., concurs.

ELLINGTON, J. (dissenting) — I must respectfully dissent. I believe the will is ambiguous, and that it was effective to revoke the living trust. I would therefore affirm.

The objective in a probate proceeding is to determine the intent of the testator. RCW 11.12.230; *In re Estate of Bergau*, 103 Wn.2d 431, 435, 693 P.2d 703 (1985). The objective in interpreting a trust is to determine the intent of the settlor. *Old Nat'l Bank & Trust Co. of Spokane v. Hughes*, 16 Wn.2d 584, 587, 134 P.2d 63 (1943); *Seattle First Nat'l Bank v. Crosby*, 42 Wn.2d 234, 246, 254 P.2d 732 (1953). The fact that Robert Furst's will does not mention his living trust is not dispositive; the question is whether Mr. Furst intended that his will revoke his trust.

The first issue is whether the will contains a latent ambiguity, such that extrinsic evidence of intent is admissible. A latent ambiguity arises when the will, as applied to the facts and circumstances, leaves a question as to the testator's intent. *Bergau*, 103 Wn.2d at 437. We have held extrinsic evidence admissible to illuminate precisely the question here: whether the decedent intended to revoke a prior trust. *See In re Estate of Button*, 79 Wn.2d 849, 490 P.2d 731 (1971).

At the age of 86, Mr. Furst transferred his entire estate to a living trust. Its primary purpose was to manage his affairs as he aged: "The primary purpose of this instrument is to provide for the income beneficiary or beneficiaries and the rights and interest of remaindermen are subordinate to that purpose." Clerk's Papers at 304. Mr. Furst was both trustor and trustee, as well as sole beneficiary. The trust

reserved to the trustor "the right to amend or revoke this agreement, in whole or in part, by instrument in writing delivered to the Trustee[.]" Clerk's Papers at 307. Nothing in the trust document further specified the type or contents of an instrument to be used for revocation, or prevented a later, inconsistent will from serving that purpose.

Fifteen months later, Mr. Furst revoked all prior wills (including the pour-over will executed at the time the trust was created) and made a new will leaving his estate to different beneficiaries, without referencing the trust.

The majority observes that a will passing few if any assets is not logically inconsistent with a prior trust containing most or all of the assets. This statement may be literally true, but it does not answer whether an ambiguity exists because it does not take into account the facts and circumstances. Unless it operated to terminate the prior trust, Mr. Furst's will accomplished nothing. Given the short time between creation of the trust and execution of the will, and the lack of any intervening change in Mr. Furst's financial circumstances, the two documents together can only raise questions, not answer them. This is a latent ambiguity.

The attorney who drafted the will testified Mr. Furst instructed him that he wished to leave all his assets to his nieces equally. This desire is inconsistent with the trust. Had Mr. Furst mentioned the trust, the attorney would have drafted additional documents. At the time of his death, the will was found prominently placed on the desk in his room at the Norse Home, on top of a stack of papers next to the telephone. It is clear Mr. Furst intended to change his testamentary disposition.

The further questions are whether Mr. Furst intended that the will act as a revocation of the trust and whether it could be effective to do so without explicitly mentioning the trust. Mr. Furst knew, from the attorney who prepared the trust, that amendment or revocation of the trust was something he, as trustor, could do at any time, simply by delivering an instrument in writing to himself as trustee.

" 'Where the settlor reserves power to revoke the trust but no method of revocation is specified, the power of revocation can be exercised in any manner which sufficiently evidences the intention of the settlor to revoke the trust.' " *Poltz v. Tyree*, 41 Wn. App. 695, 699, 705 P.2d 1229 (1985) (quoting 4A AUSTIN WAKEMAN SCOTT, THE LAW OF TRUSTS § 330.7 (3d ed. 1967)). Here, a method (a written instrument delivered to Mr. Furst as trustee) is specified, but its contents are not. Any instrument which sufficiently evidences the settlor's intent should suffice. The will is a clear expression of that intent. In sum, Mr. Furst, the trustor, intended to revoke the trust, and Mr. Furst, the testator, intended his estate to pass by way of his will. The later will was thus both revocatory and testamentary in purpose, and its failure to explicitly mention the trust is not fatal to its effectiveness.

Nor does this reasoning circumvent RCW 11.11.020(2), which provides that a general residuary clause does not pass nonprobate assets. A trustor is entitled to specify the means by which a living trust is revocable; a testamentary document may serve that purpose without creating uncertainties regarding what nonprobate assets are passed by the will. Once the revocation is honored there are no such uncertainties.

I believe we should honor Mr. Furst's intent. I thus respectfully dissent and would affirm the trial court.