[No. 53756-3-I.   Division One.   May 31, 2005.]

*In the Matter of the Estate of* DELFINO CORDERO.

JANE DAHLE, *Appellant*, v. BRENDA NADOLSKI,
*Respondent.*

*Carl Palmer*, for appellant.

*Warren M.L. Chinn* and *Kenneth H. Chang* (of *Law Offices of Kenneth H. Chang*), for respondent.

¶1 KENNEDY, J. — Subject to community property laws, RCW 11.11.020(1) permits the owner of any nonprobate asset specifically referred to in the owner's will to pass the asset to the testamentary beneficiary named in the will, notwithstanding the rights of any beneficiary of the asset named before the date of the will. And RCW 11.11.020(4) permits the owner of such asset to override the will by renaming the original beneficiary or by naming an entirely new beneficiary of the nonprobate asset, by making a written designation executed after the date of the will. To decide this appeal, we must assess the adequacy of a "switch rationale" that the decedent Delfino Cordero signed after he executed a will leaving all his nonprobate assets to

his estate, to reinstate his earlier designation of his grand-niece as his joint tenant with right of survivorship, with respect to a particular investment account.

¶2 Because the statute does not specify the form that the later beneficiary redesignation must take, and because we agree with the trial court that the signed switch ration-ale in this case was adequate to serve the statutory redesignation requirement as a matter of law, we affirm the trial court's ruling awarding the investment account to the grandniece.

I

¶3 In 1997, the decedent Delfino Cordero executed a will, which eventually was presented for probate by his grand-niece Brenda Nadolski. On February 3, 1997, Cordero opened an investment account at Murphy Favre naming Nadolski as his joint tenant with right of survivorship. In 1998, Cordero executed a new will naming his niece Jane Dahle as personal representative. That will had a clause indicating that any investment accounts should pass to Cordero's estate, even if the accounts were held jointly with others at the time of his death.[1]

¶4 By September of 2000 when Cordero and Nadolski met with their investment banker, Dan Mingo, to discuss the investment, WM Financial Services had bought out Murphy Favre, and had given the investment account a new number, 86260144. Cordero and Nadolski discussed with Mingo various investment options to earn a higher yield, and ultimately decided to switch from Franklin Floating Rate trust investment to the Washington Mutual Flexible Income Portfolio, which they said they intended to hold for a period of at least 5 years. Mingo subsequently

---

[1] The clause said: "All Money Market Accounts, Checking Accounts, savings accounts, cash, [certificates of deposit], or any investments upon my death I wish all the proceeds to go to my estate. If at the time of my death someone is in the account with me other than my name, upon my death I want to erase their names." Clerk's Papers at 5. The parties do not dispute that this clause was sufficient under RCW 11.11.020(1) to override the earlier joint tenant with right of survivorship designation.

explained in an affidavit that it was his practice and the bank's procedure to ensure that clients understood that any changes to investment portfolios do not affect survivorship designations on joint accounts. And because such investment decisions had long-term implications, he would ask both parties if the survivor intended to hang on to the investment if the joint tenant were to pass on during the life of the investment.

¶5 According to Mingo, both Cordero and Nadolski stated that they understood that the beneficiary designation would not change on account of the switch of the investment; Cordero said that he understood that Nadolski would receive the funds in the joint account at his death; and Nadolski said that she intended to keep the Flexible Income Portfolio if Cordero should pass on during the life of the investment.

¶6 In the presence of Cordero and Nadolski, Mingo then prepared a "switch rationale" which he carefully explained to them. After Mr. Cordero acknowledged that he understood the switch rationale, Mingo had him sign the document. The switch rationale describes the relative risks of the old and new investments, expresses the intent to retain the new investment for a minimum of 5 years, and states that if Cordero passes on during the life of the investment, "Brenda (who was also present at our meeting) plans on keeping the WM Flexible Income [Portfolio] as her investment." Clerk's Papers at 170.

¶7 Mr. Cordero died on January 11, 2002. Nadolski presented the 1997 will for probate and was named personal representative of the estate. She then began distributing assets. In March 2002, Nadolski transferred the funds in Account No. 86260144 to a new account in the same bank, under her sole name.

¶8 A month later, in April 2002, Cordero's niece Jane Dahle opened a new probate action and filed a will that Cordero had signed in 1998 naming Dahle as personal representative. Nadolski initiated a will contest with respect to this will. The matter went to binding arbitration,

and the arbitrator found in favor of the 1998 will. Thereafter, the King County Superior Court affirmed the arbitration award, and directed Nadolski to deliver to Dahle the assets Nadolski previously had distributed, including the proceeds of Account No. 86260144 that she had transferred to her sole name.

¶9 But following reconsideration, the trial court awarded the account to Nadolski instead, based on the fact that Cordero had, after executing the 1998 will and by signing the switch rationale, reaffirmed in writing that Nadolski was to be his joint tenant with right of survivorship on the account, notwithstanding the contrary language in the 1998 will.

¶10 Dahle appeals in her capacity as personal representative of Cordero's estate.

## II

¶11 Because the issue presented involves a mixed question of law and fact, our review is de novo, but we defer to the trial court's factual findings that are supported by substantial evidence, and we review independently whether the trial court has made an error of law that may be corrected upon appeal. As always, credibility determinations are for the trial court and not the appellate court. *See, e.g., In re Marriage of Stern*, 68 Wn. App. 922, 929, 846 P.2d 1387 (1993).

¶12 Given the issue framed and argued by the parties, we assume without holding that the trial court properly determined that the 1998 will effectively changed the beneficiary of the account from Brenda Nadolski to Cordero's estate, in accord with the testamentary disposition of nonprobate assets act, chapter 11.11 RCW. Dahle admits that when the account was opened in 1997, it was a joint tenancy with right of survivorship that would pass to

Nadolski as a nonprobate asset upon Cordero's death.[2] Dahle argues that the 1998 will transformed the account into a joint tenancy without right of survivorship and that Nadolski must prove that Cordero changed the account back into a joint tenancy with right of survivorship after the date of the will. But chapter 11.11 RCW provides for changing the *beneficiary* of a nonprobate asset, not the form of the asset, in this case, a joint tenancy with right of survivorship. *See, e.g., In re Estate of Burks*, 124 Wn. App. 327, 330, 100 P.3d 328 (2004) ("RCW 11.11.020 specifically refers to nonprobate assets and allowed Burks to change the death beneficiary of each account. What matters is not whether the accounts are probate assets, but whether Burks's will satisfied the specific requirements of RCW 11.11.020 to change the death beneficiaries of the accounts."); *In re Estate of Furst*, 113 Wn. App. 839, 843, 55 P.3d 664 (2002) ("RCW 11.11.020 directs the manner of *changing the beneficiaries* of a nonprobate asset.") (emphasis added).

¶13 The parties dispute whether the trial court properly awarded Account No. 86260144 to Nadolski under RCW 11.11.020(4). That section provides: "If the owner designates a beneficiary for a nonprobate asset after the date of the will, the will does not govern the disposition of that nonprobate asset." Nadolski argues that the Mingo Declaration and "switch rationale" demonstrate that Cordero "reaffirmed" his designation of her as the beneficiary of Account No. 86260144 after the date of the will. Dahle argues that this evidence does not satisfy RCW 11.11.010(5), providing, " 'Designate' means a written means by which the owner selects a beneficiary, including but not limited to instruments under contractual arrangements and registration of accounts, and 'designation' means the selection."

---

[2] Nadolski states that the trial court considered the Murphy Favre account application but the application was apparently not included in the designation of clerk's papers. Dahle does not contradict Nadolski's claim, and in fact cites the same page of the clerk's papers, a portion of Nadolski's briefing below stating that it was a joint account with right of survivorship. Clerk's Papers at 60.

■ ■ ¶14 Nothing in the statute limits the written means of designation to any particular form. Here, Nadolski presented a written document, signed by Cordero in 2000, after the date of the 1998 will, indicating that Cordero understood and intended that she would receive the account upon his death. Based on this evidence, which we conclude is legally sufficient under the statute, the trial court properly awarded the account to Nadolski.

■ ■ ¶15 We also reject Dahle's claim that the deadman's statute, RCW 5.60.030, prohibits consideration of Mingo's testimony. The purpose of the deadman's statute is to prevent interested parties from giving self-serving testimony regarding conversations and transactions with the deceased because the dead cannot respond to unfavorable testimony. *Hofsvang v. Estate of Brooke*, 78 Wn. App. 315, 318, 897 P.2d 370 (1995); *Erickson v. Kerr*, 125 Wn.2d 183, 187, 883 P.2d 313 (1994). Here, Mingo is not an interested party. The trial court properly considered Mingo's testimony authenticating the switch rationale as a business record and describing his discussion with Cordero and Cordero's signature on the switch rationale confirming what his records already showed, that Nadolski was the designated beneficiary on the account.

¶16 Affirmed

ELLINGTON, A.C.J., and APPELWICK, J., concur.

Review denied at 156 Wn.2d 1019 (2006).