[No. 65821-2-I.    Division One.    October 31, 2011.]

JEFFREY MANARY, *Respondent*, v. EDWIN A. ANDERSON, *Appellant*.

*John M. Casey* and *Andrea Schiers* (of *Curran Law Firm*), for appellant.

*Thomas G. Burke* (of *Burke Law Offices Inc.*), for respondent.

¶1 Cox, J.—A testator or testatrix may dispose of nonprobate assets by will, provided the disposal complies with the Testamentary Disposition of Nonprobate Assets Act (Act).[1] Such a disposition is effective, notwithstanding the rights of any beneficiary designated before the date of the will.[2]

¶2 Here, Homer Greene and Eileen Greene, husband and wife, executed a revocable living trust in 1995. They simultaneously funded the trust by conveying by deed their interests in their residential real property to themselves as trustees under this trust. The trust initially named three beneficiaries.

¶3 Eileen predeceased Homer in 1998.[3] In 1999, Homer amended the trust in ways that we describe later in this opinion.

¶4 Homer executed his last will and testament on November 5, 2004. It bequeathed Homer's interest in the residential real property to Edwin Anderson.

---

[1] RCW 11.11.020.

[2] RCW 11.11.020(1).

[3] For clarity, we adopt the naming convention for the Greenes used by Edwin Anderson, the appellant and personal representative of the estate of Homer.

¶5 At issue in this quiet title action is the right to Homer's one-half interest in the residential real property that was a subject of both Homer's will and the Greenes' prior revocable living trust. The trial court granted summary judgment to Jeffrey Manary, the named second successor trustee for the Greenes' 1995 revocable living trust. Because the Act controls, Anderson, to whom Homer bequeathed his interest in the property in his 2004 will, is the rightful owner. We reverse and remand with instructions.[4]

¶6 Under the terms of the Greenes' 1995 trust, Homer and Eileen retained possession and full management of the residential real property and had the right to occupy it rent free. Upon the first spouse's death, the surviving spouse was entitled to remain on the property rent free. But the survivor was to create an irrevocable Family Trust for the deceased spouse's community property interest in the couple's property and his or her separate property. The surviving spouse's interest in the community property was to be transferred to a Survivor's Trust where the surviving spouse retained all rights of revocation, amendment, modification, and withdrawal. At the surviving spouse's death, the assets in both the Family Trust and the Survivor's Trust were to pass to the beneficiaries identified in the original 1995 trust.

¶7 Eileen predeceased Homer in December 1998, and Homer became the sole trustee. Although the trust stated that he was to place Eileen's interest in their community property and her separate property into the Family Trust, he did not establish that trust. Instead, he left all assets in the original trust.[5]

¶8 In August 1999, Homer amended the trust beneficiaries, naming his sister, Alice Manary, the sole beneficiary.

---

[4] We deny Manary's motion to strike certain assignments of error.

[5] Homer's failure to create the Family Trust and Survivor's Trust are not at issue in this appeal. Because neither was created, the remainder of this opinion refers only to the Greenes' 1995 trust.

There appears to be a dispute between the parties over the effect of this amendment. But those issues are not currently before us, and we express no opinion about them.

¶9 At the same time that Homer amended the trust to name his sister as the sole beneficiary, he also named her as the successor trustee and his nephew, Jeffrey Manary, as second successor trustee. There does not appear to be any dispute between the parties as to Jeffrey Manary's status as either second successor trustee or as a proper party in this appeal.[6]

¶10 A few years before Homer's death, Anderson moved onto the residential real property and became Homer's caretaker. On November 5, 2004, Homer executed his last will, which bequeathed his interest in this property to Anderson.

¶11 Homer died in January 2007. The court appointed Anderson as the personal representative of his estate.

¶12 After Homer's death, Anderson remained on the property. Alice Manary, as successor trustee under the trust, commenced this quiet title action against Anderson, seeking to eject him and to establish her right to the property. Anderson counterclaimed, seeking to quiet title in himself. Alice Manary passed away, and Jeffrey Manary succeeded her as the plaintiff.

¶13 On cross motions for summary judgment, each party claimed a right to Homer's interest in the property. Anderson based his claim on the Act. Manary based his claim on the provisions of the 1995 trust. The trial court granted Manary's motion, quieting title in him.

¶14 Anderson appeals.

---

[6] This record indicates that Jeffrey Manary was substituted as plaintiff by prior order of the superior court. Clerk's Papers at 113.

## TESTAMENTARY DISPOSITION OF NONPROBATE ASSETS

¶15 Anderson argues that the trial court erred, as a matter of law, in granting summary judgment in favor of Manary. Anderson asserts that he is entitled to prevail under the Act. We agree.

¶16 An order granting summary judgment should be affirmed if no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law.[7] Summary judgment orders are reviewed de novo, taking the evidence and all reasonable inferences from it in the light most favorable to the nonmoving party.[8]

¶17 Here, there are no genuine issues of material fact for trial. The main issue is legal: whether the Act applies to Homer's 2004 testamentary disposition of his interest in the residential real property.

¶18 The fundamental objective in construing a statute is to ascertain and carry out the legislature's intent.[9] "Statutory interpretation begins with the statute's plain meaning."[10] The plain meaning "is to be discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole."[11]

¶19 In determining the plain meaning of a statute, the court "must not add words where the legislature has chosen

---

[7] CR 56(c).

[8] *Schaaf v. Highfield*, 127 Wn.2d 17, 21, 896 P.2d 665 (1995).

[9] *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010) (quoting *Arborwood Idaho, LLC v. City of Kennewick*, 151 Wn.2d 359, 367, 89 P.3d 217 (2004)).

[10] *Id.*

[11] *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009).

not to include them . . . ."[12] If the statute is unambiguous, the court's inquiry is at an end.[13]

¶20 RCW 11.11.020(1) provides:

Subject to community property rights, upon the death of an owner *the owner's interest in any nonprobate asset specifically referred to in the owner's will belongs to the testamentary beneficiary named to receive the nonprobate asset*, notwithstanding the rights of any beneficiary designated before the date of the will.[14]

¶21 RCW 11.11.010(8) defines an "owner" as "a person who, during life, has beneficial ownership of the nonprobate asset." RCW 11.11.010(10) defines a "testamentary beneficiary" as "a person named under the owner's will to receive a nonprobate asset under this chapter. . . ."

¶22 There is no dispute that Homer was an "owner" under the Act. He had beneficial use of the residential real property during his life under the terms of the 1995 trust. Likewise, Homer's interest in this property is "specifically referred to" in his will by its tax parcel number and street address. It is also undisputed that Anderson is the "testamentary beneficiary" under the Act. Homer's will specifies that Anderson would receive Homer's interest in the residential real property.

¶23 The main dispute between the parties is whether Homer's interest in the real property is a nonprobate asset. We hold that it is.

■ ¶24 RCW 11.11.010(7)(a) adopts the definition of a "nonprobate asset" in RCW 11.02.005, excluding the exceptions identified in RCW 11.11.010(7)(a). Specifically, RCW 11.02.005(15) defines "nonprobate asset" and also sets forth a nonexclusive list of examples:

---

[12] *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003).

[13] *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

[14] (Emphasis added.)

*"Nonprobate asset" means those rights and interests of a person having beneficial ownership of an asset that pass on the person's death under a written instrument or arrangement other than the person's will.* "Nonprobate asset" *includes, but is not limited to*, a right or interest passing under a joint tenancy with right of survivorship, joint bank account with right of survivorship, payable on death or trust bank account, transfer on death security or security account, deed or conveyance if possession has been postponed until the death of the person, *trust of which the person is grantor and that becomes effective or irrevocable only upon the person's death*, community property agreement, individual retirement account or bond, or note or other contract the payment or performance of which is affected by the death of the person. *"Nonprobate asset" does not include*: A payable-on-death provision of a life insurance policy, annuity, or other similar contract, or of an employee benefit plan; a right or interest passing by descent and distribution under chapter 11.04 RCW; a right or interest if, before death, the person has irrevocably transferred the right or interest, the person has waived the power to transfer it or, in the case of contractual arrangement, the person has waived the unilateral right to rescind or modify the arrangement; or a right or interest held by the person solely in a fiduciary capacity.[15]

¶25 As we stated above, RCW 11.11.010(7)(a) specifies additional exclusions from the definition of "nonprobate asset":

(i) A right or interest in real property passing under a joint tenancy with right of survivorship;

(ii) A deed or conveyance for which possession has been postponed until the death of the owner;

(iii) A right or interest passing under a community property agreement; and

(iv) An individual retirement account or bond.

■ ¶26 The general definition of a "nonprobate asset" includes "those rights and interests of a person having

---

[15] (Emphasis added.)

beneficial ownership of an asset that pass on the person's death under a written instrument or arrangement other than the person's will."[16] Under the express terms of the trust, Homer had a beneficial interest in the residential real property—the asset—during his life. Moreover, the trust also expressly provided that this beneficial interest would pass to the trust's beneficiaries upon his death. Thus, under the plain words of the statute, Homer's interest in the real property is a nonprobate asset.

¶27 Furthermore, his interest in the property also qualifies as a nonprobate asset because it falls expressly within the nonexclusive list of examples of such assets. Specifically, his interest in the property is an interest passing under a "trust of which the person is grantor and that becomes effective or irrevocable only upon the person's death. . . ."[17] Homer was one of two grantors under the Greenes' 1995 revocable trust. Upon his death, the trust became irrevocable as to him. Therefore, his interest in the property is a nonprobate asset.

¶28 For these reasons, under the plain language of RCW 11.11.020(1), upon Homer's death, his interest in the property vested in Anderson as a nonprobate asset.[18] Accordingly, Anderson was entitled to summary judgment on his quiet title claim.

¶29 The trial court granted summary judgment for Manary, stating:

7. Neither the Warranty Deed nor the Will mention or refer to the Trust. Neither the Warranty Deed nor the Will mention or refer to Mr. Greene as a Trustee.

8. Mr. Greene's failure to either modify the Trust as to the Property or to acknowledge the Trust in either the Warranty Deed or his Will purporting to transfer the Property to Defen-

---

[16] RCW 11.02.005(15).

[17] *Id.*

[18] RCW 11.11.060 ("[T]he entitlement of the testamentary beneficiary to the nonprobate asset vest[s] immediately upon death of the owner.").

dant Anderson resulted in the Property remaining Trust property. As such, Mr. Greene had no right, title or interest in the Property to convey to Defendant Anderson in either the Warranty Deed or the Will. Both attempted transfers to Defendant Anderson were invalid.[19]

¶30 Nothing in the statute requires Homer's will to mention the trust in order for RCW 11.11.020 to be effective. Moreover, there is nothing in the statute that requires a testator or testatrix to acknowledge a previously created trust in the will. The trial court's conclusion to the contrary was incorrect.

¶31 Manary primarily argues that Homer's interest in the property is not a nonprobate asset because it falls within one of the Act's four exceptions to the definition. He claims that the Act does not apply here because real estate joint tenancies and future interest deeds are excluded from the definition of a "nonprobate asset." But, Homer's interest in the property is not a joint tenancy or a future interest deed, so this is not persuasive.

¶32 Manary also argues that the interest is a "deed or conveyance for which possession has been postponed until the death of the owner . . . ."[20] This claim is based on the fact that the Greenes funded the 1995 trust by conveying by deed the residential real property to themselves as trustees.[21] We reject this argument because it is directly at odds with the definition of "nonprobate asset":

> those rights and interests of a person having beneficial ownership of an asset *that pass on the person's death* under a written instrument or arrangement other than the person's will.[22]

---

[19] Clerk's Papers at 243.

[20] Brief of Respondent at 9.

[21] *Id.*

[22] RCW 11.02.005(15).

The fact that the Greenes funded their trust in 1995 and that Homer's interest in the house did not pass until his death does not bar classifying it as a nonprobate asset. The statute's language makes this clear.

¶33 Next, Manary argues that even if Homer's interest in the property is a nonprobate asset, Anderson is not entitled to it because he did not properly notify Manary or the trust under RCW 11.11.050(1). This argument is not persuasive.

¶34 RCW 11.11.050(1), which is titled "Notice—Affidavit—Form—Limitation on liability for failure to provide notice," states:

> Written notice under this chapter must be served personally or by certified mail, return receipt requested and postage prepaid, on the financial institution or *other third party having the nonprobate asset in its possession or control*, on the beneficiary, on the testamentary beneficiary, and on the personal representative, and proof of the mailing or service must be made by affidavit and filed under the cause number assigned to the owner's estate.[23]

The statute's plain language requires notice only to third parties having the nonprobate asset in their possession. The interest in the real property was never in Manary's possession. Thus, this statute is inapplicable.

¶35 Manary also argues that Anderson failed to timely petition the court for relief within the statutory time limits, as required by RCW 11.11.070(3). We conclude that this statute is also inapplicable.

¶36 RCW 11.11.070 is titled "**Ownership rights as between individuals preserved—Testamentary beneficiary may recover nonprobate asset from beneficiary—Limitation on action to recover**" and states:

> (1) The protection accorded to financial institutions and other third parties under RCW 11.11.040 has no bearing on the

---

[23] (Emphasis added.)

actual rights of ownership to nonprobate assets as between beneficiaries and testamentary beneficiaries, and their heirs, successors, personal representatives, and assigns.

(2) *A testamentary beneficiary entitled to a nonprobate asset otherwise transferred to a beneficiary not so entitled*, and a personal representative of the owner's estate on behalf of the testamentary beneficiary, *may petition the superior court having jurisdiction over the owner's estate for an order declaring that the testamentary beneficiary is so entitled*, the hearing of the petition to be held in accordance with chapter 11.96 RCW.

(3) *A testamentary beneficiary claiming a nonprobate asset who has not filed such a petition within the earlier of: (a) Six months from the date of admission of the will to probate; and (b) one year from the date of the owner's death, shall be forever barred from making such a claim or commencing such an action.*[24]

¶37 Manary selectively quotes RCW 11.11.070(3). But, when the full statute is examined, it is clear that notice of six months or one year is required only if the nonprobate asset is held by the original beneficiary and the testamentary beneficiary is entitled to it.

¶38 As we have already stated earlier in this opinion, there is no evidence that the interest in the real property was held by Manary at any time relevant to this case. Moreover, the will states that Anderson, the testamentary beneficiary, is entitled to the property. Therefore, notice to Manary was not required.

¶39 Next, Manary argues that the Act cannot be applied because the will did not mention the 1995 trust and Homer did not revoke the trust in the will. He relies on *In re Estate of Furst*.[25] That case is distinguishable.

¶40 There, Furst created a revocable living trust, funded it with the majority of his assets, and simultaneously

---

[24] (Emphasis added.)

[25] 113 Wn. App. 839, 55 P.3d 664 (2002).

executed a pour-over will bequeathing the residue of his estate to the trust.[26] He later executed a last will, which revoked all prior wills and bequeathed the residue of his estate to two individuals.[27] The last will did not mention the trust.[28] Furst did not transfer any of his assets out of the trust before his death several months later.[29]

¶41 Upon Furst's death, the trust's successor trustee petitioned the court to declare that the assets in the trust were nonprobate assets to be distributed under the terms of the trust.[30] The will's residuary beneficiary objected and sought to have the trust declared revoked and its assets distributed according to the will.[31] On cross motions for summary judgment, the trial court granted the residuary beneficiary's motion, deciding that the will revoked the trust.[32]

¶42 On appeal, this court first addressed whether the last will effectively revoked the trust, converting the trust's assets into probate assets subject to disposition under the will.[33] The court held that the will did not revoke the trust because it did not purport to do so and did not even mention the trust.[34] The court also noted that the Act could not be applied to change the beneficiary of the trust because the provisions of RCW 11.11.020(2) were not followed.[35]

---

[26] *Id.* at 840-41.

[27] *Id.* at 841.

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.* at 842-43.

[34] *Id.* at 843.

[35] *Id.* at 843-44; RCW 11.11.020(2) ("A general residuary gift in an owner's will, or a will making general disposition of all of the owner's property, does not entitle the devisees or legatees to receive nonprobate assets of the owner.").

¶43 Manary argues that as in *Furst*, Homer's bequest of his interest in the property to Anderson is invalid because the last will neither mentions the trust nor revokes its provisions in accordance with the terms of the trust. But, unlike the *Furst* case, this case does not involve revocation of the trust by Homer's last will.

¶44 Here, Anderson bases his claim on the provisions of the Act, not on common law principles regarding revocation of prior trusts by a last will. Thus, it is irrelevant that this will neither mentions the prior trust nor purports to revoke it. As we have already explained, unlike *Furst*, there is full compliance with the relevant provisions of the Act here. Because compliance with the Act is all that is required, *Furst* does not necessitate any different result here.

¶45 Manary also argues that Anderson is not entitled to Homer's interest in the property because the property was owned by the trust, and not by Homer.[36] But, under the Act's plain language, and as Manary correctly concedes in his brief,[37] Homer was an "owner" of his interest in the property and, therefore, could bequeath it to Anderson by specifically identifying it in his will.

¶46 Finally, Manary argues that the Act "does not eliminate the need to substantially follow requirements specifically set forth in [the] terms of a will substitute."[38] In fact, the Act does just that. Compliance with the Act's express terms permits a testamentary disposition that need not comply with the previous trust's provisions.[39]

---

[36] Brief of Respondent at 17-18.

[37] *Id.* at 18.

[38] *Id.* at 20.

[39] RCW 11.11.020(1).

¶47 We reverse the summary judgment order and remand for entry of summary judgment in favor of Anderson.

GROSSE and ELLINGTON, JJ., concur.

Review granted at 173 Wn.2d 1023 (2012).