# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Matter of the<br><br>THE GORDON AND FRANCES SALES FAMILY TRUST.<br><br>MICA JEAN MCLEAN (aka WRIGHT), LUKE G. SPRAUGE, ZECHARIAH E. SPRAGUE,<br><br>                    Appellants,<br><br>        v.<br><br>ECHO MARIE SALES and BRUCE GORDON SALES, Co-Successor Trustees of the GORDON AND FRANCES SALES FAMILY TRUST,<br><br>                    Respondents. | No.  52630-1-II<br><br><br><br><br><br><br>UNPUBLISHED OPINION |

LEE, C.J. — Mica Jean McLean (aka Wright), Luke G. Sprague, and Zechariah E. Sprague

(collectively Wright)[1] appeal the trial court's Findings of Fact and Conclusions of Law and Partial

Order on Merits in this Trust and Estate Dispute Resolution Action (TEDRA) petition.  Wright

---

[1]  The appellant Mica Jean McLean (aka Wright) is referred to throughout the record by various last names.  For purposes of this opinion, we will use the name Wright to collectively refer to all the appellants.

argues that the trial court erred by (1) interpreting a trust abstract[2] (Abstract) to determine the terms of a missing Trust Agreement not in accordance with RCW 11.96A.020, (2) using a certification of trust under RCW 11.98.075 to determine the terms of the missing Trust Agreement, (3) re-creating the terms of the missing Trust by interpreting the Abstract, and (4) entering findings of fact which are not supported by substantial evidence and entering conclusions of law which are not supported by the findings of fact.

We hold that the trial court (1) did not err by interpreting a trust abstract to determine the terms of a missing Trust Agreement, (2) did not use a certification of trust under RCW 11.98.075 to determine the terms of the missing Trust, (3) did not err by re-creating the terms of the missing Trust by interpreting the Abstract, and (4) did not err in its findings of fact and conclusions of law. Accordingly, we affirm the trial court's Findings of Fact and Conclusions of Law and Partial Order on Merits.

FACTS

This TEDRA petition involves the issue of whether a trust abstract can be used to determine the terms of a lost trust agreement.

A.    BACKGROUND

Gordon and Frances Sales, husband and wife, were the parents of Echo Sales, Bruce Sales, and Mica McLean (aka Wright) and the grandparents of Luke Sprague and Zechariah Sprague.

---

[2]  The Gordon and Frances Sales Family Trust Certificate of Trustee's Power and Authority and Abstract of Trust

No. 52630-1-II

Gordon and Frances[3] executed a trust on January 10, 1994. The assets transferred into the Trust were the Montana Ranch Property, the Montana Mining Property, and the Sequim Property. The Abstract was filed with the Clallam County Auditor on May 25, 1994. The Abstract lists Gordon and Frances as both the Grantors and Trustees of the trust. The Abstract states, in relevant part:

> The following provisions are found in that certain Trust Agreement named and described above, by and between the above-designated Grantors and Trustee, and may be relied upon as a full statement of the matters covered by such provisions by anyone dealing with Trustee or any successor Trustee. However, in the unlikely event there is a clerical error causing a discrepancy between the original Trust and this Certificate of Trustee's Power and Authority and Abstract of Trust, the original Trust Agreement will control the interpretation and administration of the Trust.
>
> . . . .
>
> 1.2    Names and Addresses of Beneficiaries. We hereby disclose the names and addresses of the beneficiaries of this trust, as follows:

| | |
|---|---|
| Bruce Gordon Sales [Address] | Per Stirpes |
| Mica Jean McLean [Address] | Per Stirpes |
| Echo Marie Sales [Address] | Per Stirpes |
| Luke G. Sprague [Address] | Per Capita |
| Zechariah E. Sprague [Address] | Per Capita |

> 1.3    Designation of Successor Trustees. If the Trustee dies or otherwise ceases to function as Trustee, the following shall serve as Successor Trustee in the following order:

---

[3] Because several of the parties have the same last name, they are referred to by their first name for clarity. No disrespect is intended.

Echo Marie Sales
[Address]

Bruce Gordon Sales
[Address]

. . . .

1.10   Place of Constructive Notice of Trust. The parties to this Trust designate the County Recorder of [C]lallum County, Washington, as the location where title companies and others may check to ascertain if this Trust has been modified in any material respect. A signed Abstract of certain terms of this Trust shall be filed or recorded with that public office as notice of the existence of this Trust, its Grantor, Trustee, beneficiaries, Trustee powers and other relevant provisions. All parties dealing with this Trust may rely on the Abstract, Amended Abstract and other documents filed or recorded with that public office in ascertaining the status of this Trust and may assume, if there are no recordings to the contrary, that no material modifications have been made to the Trust since the last recording.

3.1   Power in Grantors During Lifetimes of Both Grantors. Subject to paragraph 3.3 (Irrevocability on Death of First Grantor Spouse), Grantors reserve the right at any time or times to amend or revoke this Trust Agreement and the Trusts hereunder, in whole or in part, by an instrument in writing, signed by both Grantors and delivered in Grantors' lifetimes to Trustee; provided, however, that if there are Husband and Wife Grantors, no such alteration, amendment or revocation shall affect the character of any property held by the Trust, and the interest of the Husband and Wife in the various Trust assets, whether community, separate or otherwise, shall retain its character as such. Nothing herein shall be construed as a transfer of separate properties from Husband to Wife or from Wife to Husband, and in the event of any revocation or amendment, all property shall be reconveyed to the respective owners. If this Trust Agreement is revoked in its entirety, the revocation shall take effect upon the delivery of the required writing to Trustee. On the revocation of this Trust Agreement in its entirety, Trustee shall deliver to Grantors, or as Grantors may direct in the instrument of revocation, all the Trust estate.

4.2   Trustee Powers. In the investment, administration and distribution of the Trust estate and the several shares thereof, the Trustee (subject only to the duty to apply the proceeds and avails of the Trust estate to the purposes herein specified) may perform every act in the management of the Trust property which individuals may perform in the management of like property owned by them free of trust. Trustee may exercise every power with respect to each item of property in the Trust estate, real or personal, which individual owners of like property may exercise,

including, by way of illustration but not by way of limitation, the following powers:[4]

. . . .

4.1.cc <u>To Sell and Lease</u>. To sell, lease, pledge, mortgage, transfer, exchange, convert or otherwise dispose of, or grant options with respect to, any and all property at any time forming a part of the trust estate, in such manner, at such time or times, for such purposes and for such prices and upon such terms, credits and conditions as Trustee deems advisable. Any lease may be made for such period of time and upon such terms and conditions as Trustee may deem proper and may extend beyond the period fixed by statute for leases made by fiduciaries and beyond the duration of the Trust without the approval of any court.

. . . .

8.4    <u>Distributions</u>. All distributions of income or principal shall be made to the respective beneficiaries in person or may at their direction be deposited in any bank to the credit of such beneficiary in any account carried in the beneficiary's name or jointly with another or others. Distributions to a minor or an incompetent beneficiary may nevertheless be made by Trustee for the benefit of such beneficiary in such of the following ways as in Trustee's opinion will be most desirable: . . .

Clerk's Papers (CP) at 19-22, 26-27.

Gordon died in October 2000. Frances died in August 2017. By the time of her death, Frances had transferred all of the real property out of the Trust. The Trust Agreement and all copies of the Trust Agreement were lost.

B.    TEDRA PETITION

On January 12, 2018, Echo Sales and Bruce Sales (collectively, Sales) filed a TEDRA petition against Wright, seeking a judgment determining Bruce, Mica, Echo, Luke, and Zechariah to be the only beneficiaries of the trust; an order directing Frances' Estate to return all assets in its

---

[4] The Abstract provides an illustrative list of the Trustee's powers with respect to the Trust in subsections 4.1.a through 4.1.ee.

possession that are the property of the trust; an order quieting title in all real estate held by any party to this action that is the rightful property of the trust; a judgment against both Frances' Estate and Mica for the value of all assets wrongfully distributed to Mica from the Trust; and an order awarding the petitioners their reasonable costs and attorneys' fees.

Wright's affirmative defenses were that the petition failed to state a claim upon which relief may be granted; Sales' claims were barred by the doctrine of laches, waiver and estoppel; Sales' claims were barred by the doctrine of unclean hands; the court lacked personal jurisdiction over the Montana Probate Estate; and some if not all of Sales' claims were barred by the applicable statute of limitations.

C.    BIFURCATION

On August 31, 2018, the parties filed a stipulated motion bifurcating the litigation, agreeing that the following matters would be determined at the trial scheduled for September 4, 2018:

> 1. If there is sufficient evidence for a finding of a viable, enforceable Gordon and Frances Sales Family Trust (the "Trust")
>
> 2. If either Frances Sales and/or Gordon Sales revoked the Trust.
>
> 3. The terms of the Trust, including but not limited to:
>
>> a. Frances J. Sales's authority to remove assets from the Trust and transfer them into her own name
>>
>> b. Determination of who the beneficiaries of the trust are and their respective percentage interest.
>
> 4. Whether [Sales] are barred from asserting their claims based upon the affirmative defenses set forth in [Wright's] Response to Petition for Determination of Beneficiaries Interests, et. al. filed on July 3, 2018.

CP at 109-10. The trial court accepted the parties' stipulation and ordered the litigation bifurcated.

At the September 4, 2018 trial, no witnesses were called. Instead, the parties stipulated to the admission of the following documents: the Abstract; Quit Claim Deed Creating Trust, Lincoln County, Montana, Clerk & Recorder's Office, book 200 page 482 (Montana Ranch Property); Deed of Realty Transfer, Clallam County Auditor's File No. 705913 (Sequim Property); and Quit Claim Deed Creating Trust, Clallam County Auditor's File No. 706566 (Sequim Property). The parties argued their respective positions based on the stipulated evidence.

D.      TRIAL COURT RULINGS

The trial court entered written Findings of Fact and Conclusions of Law. The trial court's findings of fact stated, in relevant part:

> 4.      [Wright does] not challenge the capacity of Gordon Sales or Frances Sales to create a trust, therefore capacity is assumed by this Court.
>
> 5.      [Wright does] not challenge the authenticity of the Abstract of Trust or of Gordon Sales' or Frances Sales' signatures to the Abstract of Trust, therefore the authenticity of the Abstract of trust is assumed by this Court.
>
> 6.      The Abstract of Trust contains a number of formatting and structural inconsistences, including jumps in paragraph numbering and some reference to clauses not included, but despite these inconsistencies, the Abstract of Trust is logically consistent with sufficient information to determine the intent of the Trustors.
>
> . . . .
>
> 8.      Paragraph 1.2 of the Abstract of Trust defines specific beneficiaries of the Trust.
>
> 9.      The Abstract of Trust generally contains the duties a Trustee is to perform for the Trust.
>
> 10.      The Abstract of Trust does not identify one or more individuals as both the sole Trustees and the sole beneficiaries of the Trust.
>
> . . . .

7

12. By the language of paragraph 1.10, it was the intent of the Trustors for all parties to rely on the terms set forth in the Abstract in lieu of the original Trust document itself.

. . . .

14. By including the language "(Irrevocability on Death of First Grantor Spouse)" Gordon Sales and Frances Sales intended the Trust to become irrevocable upon the first of them to die.

15. The Trust became irrevocable upon the death of Gordon Sales.

16. The parties provided no evidence that either Gordon Sales or Frances Sales, acting together or separately, intended to revoke the Trust.

17. As the surviving Grantor and Trustee of the Trust, Frances Sales had no authority to transfer assets of the Trust to herself outside of the Trust.

18. From the time of Gordon Sales death, the corpus of the Trust should have remained in the Trust.

19. The findings set forth herein is not a full adjudication of all matters before this Court in the above entitled action, but it is a full and final adjudication regarding the formation, continuation, and terms of the Trust.

20. No future determination or finding regarding those matters that remain at issue will have effect on those findings set forth herein.

CP at 12-13. The trial court's conclusions of law stated, in relevant part:

2. The Abstract of the Trust meets the requirements of a trust as set forth in RCW 11.98.011(1), namely:

(a) Gordon and Frances Sales had capacity to form a trust;

(b) They indicated an intention to create a trust.

(c) They named defined beneficiaries.

(d) They assigned duties for the Trustee of their Trust to perform.

8

(e) The same individuals were not the sole trustee and sole beneficiary.

3. The Trust was never revoked

4. The Trust became irrevocable upon the death of Gordon Sales.

5. Frances Sales had no authority to remove assets from the Trust or transfer assets to herself outside of the Trust.

6. The Abstract of Trust sets forth the terms of the Trust and shall be enforceable against the parties.

CP at 14. The trial court entered a Partial Order on Merits on October 12, 2018. In this order, the trial court found:

1. There is no just reason to delay final judgment regarding the creation, continuation and terms of the Trust, therefore, pursuant to CR 54(b), this judgment is final.

2. This Court certifies, and all parties to this litigation stipulate, that this order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that immediate review of the order may materially advance the ultimate termination of the litigation.

3. This is a case of first impression, in that, this is the first time that a Trust certificate, or abstract, alone, is used to recreate missing trust provisions.

CP at 17.

On November 2, 2018, Wright filed a notice for discretionary review, seeking review of the Findings of Fact and Conclusions of Law, and Partial Order on Merits. We granted discretionary review.

ANALYSIS

A.    STANDARD OF REVIEW

An express trust is "'a fiduciary relationship with respect to property, subjecting the person by whom the title to property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it.'" *In re Marriage of Lutz*, 74 Wn. App. 356, 365, 873 P.2d 566 (1994) (quoting 1 William F. Fratcher, *Scott on Trusts* § 2.3, at 41 (4th ed. 1987)). An express trust is "created by contract of the parties." *Farrell v. Mentzer*, 102 Wn. 629, 632, 174 P. 482 (1918).

The interpretation of a trust instrument is a question of law that this court reviews de novo. *In re Washington Builders Ben. Trust*, 173 Wn. App. 34, 75, 293 P.3d 1206, *review denied*, 177 Wn.2d 1018 (2013). The purpose of construing such instruments is to give effect to the maker's intent. *In re Estate of Riemcke*, 80 Wn.2d 722, 728, 497 P.2d 1319 (1972). We ascertain the intent from the language of the trust instrument itself, considering the instrument in its entirety and giving effect to every part thereof. *In re Estate of Bergau*, 103 Wn.2d 431, 435, 693 P.2d 703 (1985).[5]

B.    RCW 11.96A.020

Wright argues that RCW 11.96A.020 does not give the trial court the ability to interpret a trust abstract to re-create missing trust terms. We disagree.

RCW 11.96A.020 states:

---

[5] Wright argues that Sales had the burden of proving the missing trust provisions by clear, cogent, and convincing evidence, citing *In re Estate of Black*, 153 Wn.2d 152, 102 P.3d 796 (2004). But here, both parties agree that a trust exists and that the Trust Agreement is lost. And neither party disputes the authenticity of the Abstract. Thus, the trial court interpreted the Abstract to determine the terms of the Trust. The interpretation of a trust or contract is a question of law that we review de novo. *Washington Builders Ben. Trust*, 173 Wn. App. at 75.

General power of courts—Intent—Plenary power of the court.

     (1) It is the intent of the legislature that the courts shall have full and ample power and authority under this title to administer and settle:
     (a) All matters concerning the estates and assets of incapacitated, missing, and deceased persons, including matters involving nonprobate assets and powers of attorney, in accordance with this title; and
     (b) All trusts and trust matters
     (2) If this title should in any case or under any circumstance be inapplicable, insufficient, or doubtful with reference to the administration and settlement of the matters listed in subsection (1) of this section, the court nevertheless has full power and authority to proceed with such administration and settlement in any manner and way that to the court seems right and proper, all to the end that the matters be expeditiously administered and settled by the court.

(bold face omitted). Thus, under RCW 11.96.020(1), the trial court has "full and ample power" to settle all trusts and trust matters under TEDRA. And if TEDRA is insufficient with reference to the administration and settlement of all matters concerning estates and trusts, the court may do so "in any manner and way that to the court seems right and proper." RCW 11.96.020(2); *See In re Irrevocable Trust of McKean*, 144 Wn. App. 333, 343, 183 P.3d 317 (2008).

Here, the preamble to the Abstract states,

*The following provisions are found in that certain Trust Agreement* named and described above, by and between the above-designated Grantors and Trustee, *and may be relied upon as a full statement of the matters covered by such provisions* by anyone dealing with Trustee or any successor Trustee. However, in the unlikely event there is a clerical error causing a discrepancy between the original Trust and this Certificate of Trustee's Power and Authority and Abstract of Trust, the original Trust Agreement will control the interpretation and administration of the Trust.

CP at 19 (emphasis added). Thus, the plain language of the Abstract shows that the Gordon and Frances intended for "anyone," which would include the court, to rely on the provisions in the Abstract as a "full statement" of the same matters covered by the Trust Agreement. CP at 19.

11

Additionally, the legislature gave trial courts "full and ample power" to settle all Trust matters and where TEDRA is insufficient, "in any manner and way that to the court seems right and proper." RCW 11.96A.020. TEDRA does not contain a specific provision involving the use of a trust abstract to interpret a trust agreement. Thus, TEDRA was insufficient under this circumstance. But RCW 11.96.020(2), along with the plain language of the Abstract, allowed the trial court to interpret the Abstract to determine the terms of the missing Trust Agreement so that this matter could be expeditiously administered and settled by the court. Therefore, Wright's argument fails.[6]

C.      CERTIFICATION OF TRUST

Wright argues that the trial court improperly used the abstract to re-create missing Trust terms. Wright contends that a certification under RCW 11.98.075 is "not for Beneficiaries to use as the Trust or to re-create missing Trust provisions. At best, the Certification can be used to establish those provisions actually set out in the Certificate." Br. of App. at 18. Wright also contends that the certification does not have to contain the distribution scheme. We disagree.

RCW 11.98.075, which was added to chapter 11.98 in 2011, states "Instead of furnishing a copy of the trust instrument to a person other than a beneficiary, the trustee may furnish to the person a certification of trust." RCW 11.98.075(1). The certification of trust must include certain terms, but unlike a trust which requires definitive beneficiaries, a certification does not need to contain the dispositive terms of the trust. RCW 11.98.075(4); RCW 11.98.011.

---

[6] Wright cites to *Matter of Estate of Rathbone*, 190 Wn.2d 332, 412 P.3d 1283 (2018), to argue that TEDRA alone does not allow the court to interpret the Abstract and re-create missing Trust terms. But, *Rathbone* is inapposite because the court limited its analysis to nonintervention wills, not all actions under TEDRA. *Rathbone*, 190 Wn.2d 346.

Here, Wright argues that a certification under RCW 11.98.075 is not for beneficiaries to use as the Trust Agreement. But the title of the document filed in 1994 is "Certificate of Trustee's Power and Authority *And* Abstract of Trust." CP at 19 (emphasis added) (all capitalization omitted). Thus, the plain language of the document shows that it was intended to be more than just a certification of trust. Also, the Abstract was filed in Clallam County in 1994, while RCW 11.98.075 was enacted in 2011. Thus, the Abstract was not created to comply with the certification of trust statute.

Wright appears to also challenge the trial court's use of the certification of trust because it does not contain a distribution scheme. But the Abstract identifies the beneficiaries, as required by RCW 11.98.011(1)(c), and specifies distribution of the trust assets to beneficiaries by per stirpes or per capita. Finally, as discussed above, the plain language of the preamble makes it clear that Gordon and Frances intended for the provisions in the Abstract document to be a full statement of the those matters covered by the Trust Agreement. Therefore, we hold that Wright's arguments fail.

D. THE RE-CREATED TERMS

Wright argues that the trial court erred by "re-creat[ing] missing material terms" of the Trust. Br. of App. at 22. We disagree.

1. Irrevocable Trust

Wright argues that there is no clear term that the Trust became irrevocable upon Gordon's death. Wright contends that "[t]he words relied on by the Trial Court were merely the title to the third sub-paragraph of paragraph 3. It was not an operative statement, but merely descriptive. You

13

do not know from this language what exactly was contained in paragraph 3.3 which is completely missing." Br. of App. at 20.

Here, as discussed above, the trial court had the authority to interpret the Abstract to determine the terms in the missing Trust Agreement. The Abstract states:

> 3.1     Power in Grantors During Lifetimes of Both Grantors. Subject to paragraph 3.3 (Irrevocability on Death of First Grantor Spouse), Grantors reserve the right at any time or times to amend or revoke this Trust Agreement and the Trusts hereunder, in whole or in part, by an instrument in writing, signed by both Grantors and delivered in Grantors' lifetimes to Trustee.

CP at 21. While it is true the Abstract does not fully contain the language found in paragraph 3.3, the Abstract indicates that under paragraph 3.3, the trust is irrevocable on the death of the first Grantor spouse. Also, the language of the Abstract shows that the Grantors could only revoke the trust if both Grantors sign a writing and deliver that writing during their lifetimes to the Trustee. Thus, the Trust became irrevocable upon the death of one of the Grantors because at that point, they would not have been able to both sign and deliver to the Trustee during their lifetime a writing amending or revoking the Trust. Therefore, the trial court did not err in ruling that the trust became irrevocable upon Gordon's death.

2.     Distribution Scheme

Wright argues that the Abstract does not contain a distribution scheme of how or when the trust property can be distributed. The language of the Abstract does not support Wright's argument.

Here, the Abstract states:

> 8.4     Distributions. All distributions of income or principle shall be made to the respective beneficiaries in person or may at their direction be deposited in any bank to the credit of such beneficiary in any account carried in the beneficiary's name or

jointly with another or others. Distributions to a minor or an incompetent beneficiary may nevertheless be made by Trustee for the benefit of such beneficiary in such of the following ways as in Trustee's opinion will be most desirable: . . . .

CP at 27. Additionally, the Abstract specifically names five beneficiaries by their full name and address: Bruce, Mica, Echo, Luke, and Zechariah. Next to the name of each beneficiary, the Abstract states the words, "Per Stirpes" or "Per Capita." CP at 20. "'*Per capita*' means by the head as individuals, while '*per stirpes*' means by or according to stock or root; by representation." *Johnson v. Huntley*, 39 Wn.2d 499, 504, 236 P.2d 776 (1951).

The Abstract states the terms of how the trust property should be distributed. Therefore, Wright's argument fails.

    3.    Beneficiaries

Wright argues that the trial court's ruling that Frances was not a beneficiary was not supported by the Abstract. Wright contends that Frances was a beneficiary of the Trust and that a "Grantor need not name themselves a Beneficiary as they are assumed as such." Br. of App. at 20.

Here, the Abstract provides a specific list of beneficiaries and Frances is not named in the list. Also, Wright fails to provide any legal authority for the argument that a grantor need not name themselves as a beneficiary and is assumed to be a beneficiary. *See* RAP 10.3(a)(6) (stating that the Appellants' brief must contain "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record"). Based on the language in the Abstract, and in light of Wright's bare assertion that a grantor is assumed a beneficiary, Wright fails to show that Frances was a beneficiary of the Trust. *See DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372, P.2d 193 (1962) (stating "Where no authorities are

cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."). Therefore, we hold that Wright's argument fails.

4.    Empty Trust

Wright argues that the named beneficiaries are "contingent" and "[o]nly if there is property in the Trust on the date the Surviving Trustor dies would they receive a distribution." Br. of App. at 21-22. As discussed below, after Gordon's death, the Trust became irrevocable, and the corpus of the Trust should have remained in the Trust.

Because Wright fails to show that the trial court improperly interpreted the Abstract to determine the terms of the missing Trust Agreement, Wright's arguments that the trial court erred in re-creating the terms of the Trust fail.

E.    CHALLENGED FINDINGS OF FACT AND CONCLUSIONS OF LAW[7]

1.    Standard of Review

This court applies the two-step standard of review for a trial court's findings of fact and conclusions of law: first, this court determines if the trial court's findings of fact were supported by substantial evidence in the record, and if so, this court next decides whether those findings of fact support the trial court's conclusions of law. *Landmark Development, Inc. v. City of Roy*, 138 Wn.2d 561, 573, 980 P.2d 1234 (1999). However, where the trial court did not have the advantage of seeing and listening to witnesses and only considered the same written record that is before this

---

[7] Wright assigns error to finding of fact 7, but provides no argument to the challenge. We will not consider assignments of error that are unsupported by argument or citation to authority. RAP 10.3(a)(6); *DeHeer*, 60 Wn.2d at 126. Therefore, we do not consider Wright's challenge to finding of fact 7.

court, we may determine the merits of the questions raised without reference to the findings of fact entered by the trial court. *See Angelus v. Government Personnel Life Ins. Co.*, 51 Wn.2d 691, 692, 321 P.2d 545 (1958).

"'Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.'" *In re Marriage of Griswald*, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002) (quoting *Bering v. SHARE*, 106 Wash.2d 212, 220, 721 P.2d 918 (1986), *cert. dismissed*, 479 U.S. 1050, 107 S. Ct. 940, 93 L. Ed. 2d 990 (1987)), *review denied*, 148 Wn.2d 1023 (2003). Unchallenged findings of fact are verities on appeal. *Fuller v. Employment Sec. Dept. of State of Wash*, 52 Wn. App. 603, 605, 762 P.2d 367 (1988). We review a trial court's conclusions of law de novo. *Casterline v. Roberts*, 168 Wn. App. 376, 381, 284 P.3d 743 (2012).

"The fact that a court designates its determination as a 'finding' does not make it so if it is in reality a conclusion of law. Under Washington practice, a conclusion of law mislabeled as a finding, will be treated as a conclusion." *Moulden & Sons, Inc. v. Osaka Landscaping & Nursery, Inc.*, 21 Wn. App. 194, 197, 584 P.2d 968 (1978). A finding of fact is defined as "an 'assertion that a phenomenon has happened or is or will be happening independent of or anterior to any assertion as to its legal effect.'" *Moulden & Sons, Inc.*, 21 Wn. App. at 197 (quoting *Leschi v. Highway Comm'n.*, 84 Wn.2d 271, 283, 525 P.2d 774 (1974)). "If a determination concerns whether the evidence showed that something occurred or existed, it is properly labeled a finding of fact, but if a determination is made by a process of legal reasoning from, or of interpretation of the legal significance of, the evidentiary facts, it is a conclusion of law." *Goodeill v. Madison*, 191 Wn. App. 88, 99, 362 P.3d 302 (2015).

2.      Finding of Fact 6

Wright challenges finding of fact 6, which states, "The Abstract of Trust contains a number of formatting and structural inconsistencies, including jumps in paragraph numbering and some references to clauses not included, but despite these inconsistencies, the Abstract of Trust is logically consistent with sufficient information to determine the intent of the Trustors." CP at 12. Wright agrees that there are inconsistences but argues that this finding is not supported by substantial evidence because there is no distribution plan.

Wright fails to provide any legal authority for why a distribution plan is necessary to determine the intent of the Trustors. *See* RAP 10.3(a)(6); *DeHeer*, 60 Wn.2d at 126. Other than Wright's bare assertion that there is no distribution scheme, Wright fails to show there is insufficient evidence to determine the intent of the Trustors from the Abstract.[8] Therefore, we hold that Wright's challenge to finding of fact 6 fails.

3.      Finding of Fact 8

Wright challenges finding of fact 8, which states, "Paragraph 1.2 of the Abstract of Trust defines specific beneficiaries of the Trust," arguing that it is not supported by substantial evidence. CP at 12. Wright contends that "the fact [the Grantors] have power to revoke means they are Beneficiaries of their own Trust." Br. of App. at 24.

Here, the Abstract lists the names and addresses of the beneficiaries of the Trust. The beneficiaries listed under Paragraph 1.2 are Bruce, Mica, Echo, Luke, and Zechariah. Gordon and

---

[8] We also note that, as discussed above and contrary to Wright's contention, the Abstract does include a distribution plan in that it lists specific beneficiaries and next to the name of each beneficiary, the Abstract states the words, "Per Stirpes" or "Per Capita." CP at 20.

Frances were not listed as beneficiaries of the Trust. And the Abstract states that the Grantors, Gordon and Frances, had the power to amend or revoke the Trust, while both Grantors were still alive. There is no evidence the Trust was amended or revoked while both Grantors were still alive. Other than a bald assertion, Wright fails to provide any legal authority for their assertion that the Grantors' powers to revoke made them beneficiaries of the trust. *See* RAP 10.3(a)(6); *DeHeer*, 60 Wn.2d at 126.

Based on the evidence, a fair-minded rational person could believe that Paragraph 1.2 of the Abstract of the trust defines the specific beneficiaries of the Trust. Therefore, the trial court's finding of fact 8 is supported by substantial evidence.

    4.    Finding of Fact 9

Wright challenges finding of fact 9, which states, "The Abstract of Trust generally contains the duties a Trustee is to perform for the Trust," arguing that there is insufficient evidence to support this finding. CP at 12. Wright contends that the "finding fails to take into account the Trustors' ability to revoke or amend the Trust or how the Surviving Trustor can deal with the property during their lifetime." Br. of App. at 24.

Here, Paragraph 4.2 (Trustee Powers) states, "Trustee may exercise every power with respect to each item of property in the Trust estate, real or personal, which individual owners of like property may exercise, including, by way of illustration but not by way of limitation, the following powers: 4.1.a . . . 4.1.ee." CP at 22-27. Based on the evidence, a fair-minded rational person could believe that the Abstract does generally contain the duties of a Trustee to perform for the Trust. Therefore, the trial court's finding of fact 9 is supported by substantial evidence.

5. Finding of Fact 10

Wright challenges finding of fact 10, which states, "The Abstract of Trust does not identify one or more individuals as both the sole Trustees and the sole beneficiaries of the Trust," arguing that it is not supported by substantial evidence. CP at 12. Wright contends that this finding ignores the fact that the grantors can amend or revoke the Trust and fails to acknowledge the lack of disbursement terms. Wright asserts, "We simply do not know if, when and how Trust Assets may be taken out of Trust." Br. of App. at 25.

Here, the Abstract lists Gordon and Frances as Trustees, and Echo and Bruce as successor Trustees. The Abstract lists Bruce, Mica, Echo, Luke, and Zechariah as the beneficiaries of the Trust. There is no evidence that Gordon and Frances were ever named as beneficiaries of the Trust. According to the Abstract admitted into evidence, Gordon and Frances are not named beneficiaries, and based on the fact that there are 5 beneficiaries listed, when Gordon and Frances were Trustees they would not have been both the sole trustees and sole beneficiaries of the Trust. And even when Echo or Bruce would become Successor Trustees, Echo and Bruce would not be the sole trustees and sole beneficiaries because the Abstract lists Mica, Luke, and Zechariah as beneficiaries in addition to Echo and Bruce.

Based on the evidence, a fair-minded rational person could believe that the Abstract does not identify one or more individuals as both the sole Trustees and sole beneficiaries of the Trust. Wright fails to show how their arguments about amendment, revocation, and disbursement are relevant to this finding of fact. Therefore, the trial court's finding of fact 10 is supported by substantial evidence.

6.  Finding of Fact 12

Wright challenges finding of fact 12 which states, "By the language of paragraph 1.10, it was the intent of the Trustors for all parties to rely on the terms set forth in the Abstract in lieu of the original Trust document itself." CP at 13. Wright contends that paragraph 1.10 allows for third parties, not "Remaindermen" beneficiaries, to rely on the Abstract "as establishing the Trustee's powers to deal with the third parties." Br. of App. at 25.

Here, whether or not Gordon and Frances intended for all the parties to rely on the terms set forth in the Abstract in lieu of the original Trust Agreement is a determination of the legal effect of the language in Paragraph 1.10, and thus, is a conclusion of law. Therefore, we review the trial court's determination of whether or not the parties could rely on the terms set forth in the Abstract in lieu of the original Trust itself as a conclusion of law. *See Goodeill,* 191 Wn. App. at 99.

Here, the trial court's finding of fact 12 sets forth the language in paragraph 1.10 of the Abstract:

> All parties dealing with this Trust may rely on the Abstract, Amended Abstract and other documents filed or recorded with that public office in ascertaining the status of this Trust and may assume, if there are no recordings to the contrary, that no material modifications have been made to the Trust since the last recording.

CP at 21. This language shows that Gordon and Frances intended "all parties" to rely on the Abstract, not only third parties. CP at 21. While the plain language in paragraph 1.10 only states that all parties could rely on the Abstract in "ascertaining the status" of the Trust, the plain language of the preamble of the Abstract shows the intent of the Grantors for the terms set forth in the

Abstract to be a full statement of the same matters in the Trust Agreement in lieu of the original Trust Agreement. CP at 21. Therefore, the trial court did not err in its conclusion.

  7.  Finding of Fact 14

  Wright challenges finding of fact 14 which states, "By including the language '(Irrevocability on Death of First Grantor Spouse)' Gordon Sales and Frances Sales intended the Trust to become irrevocable upon the first of them to die," arguing that this finding is not supported by substantial evidence. CP at 13. Wright contends that because Paragraph 3.3 is missing from the Abstract, the trial court could not have known its operative language. Wright also contends that the finding ignores the Trustee's authority under paragraph 4.2 "to treat Trust property as if it was not in Trust." Br. of App. at 27.

  Here, whether or not Gordon and Frances intended for the Trust to become irrevocable upon the first of them to die is a determination of the legal effect of the language in Paragraph 3.1 and thus is a conclusion of law. Therefore, we review the trial court's determination of Gordon and Frances's intention that the trust become irrevocable upon the first of them to die as a conclusion of law. *See Goodeill,* 191 Wn. App. at 99.

  The trial court found in finding of fact 13 that the Abstract contains the following language: "Irrevocability on Death of First Grantor Spouse." This finding is not challenged and is a verity on appeal. *See Fuller*, 52 Wn. App. at 605. Moreover, as discussed above, the language of the Abstract also states that the Grantors could only revoke the trust if both Grantors sign a writing and deliver that writing during their lifetimes to the trustee. Thus, the Trust became irrevocable upon the death of one of the Grantors because at that point, the Grantors would not have been able

to both sign and deliver to the Trustee during their lifetime a writing amending or revoking the Trust.

The Abstract shows that Gordon and Frances intended the Trust to become irrevocable upon the first of them to die. Wright fails to show how their argument about the trustee's authority under paragraph 4.2 is relevant to the trial court's determination of the Grantors' intent regarding revocability of the Trust. Accordingly, the trial court did not err in its determination that Gordon and Frances intended the Trust to become irrevocable upon the death of a Grantor.

8.      Finding of Fact 15/Conclusion of Law 4

Wright challenges finding of fact 15 which states, "The Trust became irrevocable upon the death of Gordon Sales," arguing that the finding is not supported by substantial evidence. CP at 13. Wright contends that the Abstract does not say when or if the Trust becomes irrevocable. Wright also challenges conclusion of law 4, which states, "The Trust became irrevocable upon the death of Gordon Sales." CP at 14. Wright asserts that "[n]o operative language in the Abstract actually states the Trust becomes totally Irrevocable upon the death of a Grantor." Br. of App. at 32.

Here, as discussed above, based on the language in the Abstract, the Trust becomes irrevocable on the death of the first Grantor spouse. And Gordon was the first Grantor spouse to pass away. Based on the evidence, a fair-minded rational person could believe that the Trust became irrevocable upon the death of Gordon. Therefore, the trial court's finding of fact 15 is supported by substantial evidence.

Finding of fact 15 supports the trial court's conclusion that the Trust became irrevocable upon the death of Gordon Sales. Therefore, we hold that the trial court did not err in its finding of fact 15 or conclusion of law 4.

9.      Finding of Fact 16/Conclusion of Law 3

Wright challenges finding of fact 16, which states, "The parties provided no evidence that either Gordon Sales or Frances Sales, acting together or separately, intended to revoke the Trust." CP at 13. Wright also challenges conclusion of law 3, which states, "The Trust was never revoked." CP at 14. Wright argues that the finding and conclusion ignore "the fact that Frances took all assets out of the Trust before she died." Br. of App. at 31.

Wright relies on *Poltz v. Tyree*, 41 Wn. App. 695, 705 P.2d 1229, *review denied*, 104 Wn.2d 1022 (1985), to argue that "[b]y totally defunding the Trust during her lifetime, Frances effectively terminated the Trust." Br. of App. at 28. In *Poltz*, the trustor reserved the right to revoke the trust without notice to or consent of the beneficiary, and without any requirement that the revocation be in writing. 41 Wn. App. at 696. Additionally, the trust document stated that the sale of the property operated as a revocation of the trust. *Id*. The trust in that case was an "empty" or "naked" trust, "conveying no present rights or benefits to the beneficiary." *Id*. at 699. The court held that on the facts of the case, the trustor had the power to revoke the trust orally. *Id*.

Unlike in *Poltz*, here, under paragraph 3.1 of the Abstract, the Grantors reserved the right to revoke the Trust and provided the method of revocation: both Grantors had to sign and deliver an instrument in writing during their lifetimes to the Trustee, and the revocation would take effect upon the delivery of the required writing to the Trustee. Because, unlike in *Poltz*, the Abstract

specified the method of revocation, only that method could be used to revoke the Trust. *See In re Estate of Furst*, 113 Wn. App. 839, 842-43, 55 P.3d 664 (2002).

There are no instruments in writing in the record to show that Gordon or Frances, as Grantors, intended to revoke the Trust according to the terms set forth in the Abstract. Thus, the trial court correctly determined that there is no evidence that Gordon and Frances intended to revoke the Trust. And because there is no evidence of revocation in accordance with the terms of the Abstract, the trial court did not err in concluding that the Trust was never revoked. *See id*. at 842 (where the trust instrument specifies the method of revocation, only that method can be used to revoke the trust). Therefore, the trial court did not err in its finding of fact 16 or conclusion of law 3.

10.     Finding of Fact 17/Conclusion of Law 5

Wright challenges finding of fact 17 and conclusion of law 5, which state that, "Frances Sales had no authority to transfer assets of the Trust to herself outside of the Trust." CP at 13.

Here, whether or not Frances had the authority to transfer assets of the Trust to herself outside of the Trust is a determination of the legal effect of the language of the Abstract and thus is a conclusion of law. Therefore, we review the trial court's determination that Frances had no authority to transfer assets of the Trust to herself outside of the Trust as a conclusion of law. *See Goodeill,* 191 Wn. App. at 99.

Wright argues that the trial court ignored "the fact that the Abstract does not say the Trust became Irrevocable upon Gordon's death, that Frances was not allowed to transfer assets to herself, or to completely defund that Trust." Br. of App. at 28. Wright also argues that the conclusion

"ignores [Frances'] authority to revoke or amend the Trust and her power as Trustee to treat the property as her own, free of Trust." Br. of App. at 32.

Here, paragraph 4.2 states,

In the investment, administration and distribution of the Trust estate and the several shares thereof, the Trustee (*subject only to the duty to apply the proceeds and avails of the Trust estate to the purposes herein specified*) may perform every act in the management of the Trust property which individuals may perform in the management of like property owned by them free of trust.

CP at 22 (emphasis added). The beneficiaries of the Trust were Bruce, Mica, Echo, Luke, and Zechariah. The Trustee also had the authority

[t]o sell, lease, pledge, mortgage, transfer, exchange, convert or otherwise dispose of, or grant options with respect to, any and all property at any time forming a part of the Trust estate, in such manner, at such time or times, for such purposes and for such prices and upon such terms, credits and conditions as Trustee deems advisable.

CP at 26-27.

Based on the language of the Abstract, Frances, as Trustee, could transfer a part of the Trust estate. But the transfer had to be done in accordance with the purpose of the Trust, which was to benefit Bruce, Mica, Echo, Luke, and Zechariah. Thus, Frances had no authority to transfer assets of the Trust to herself outside of the Trust because that transfer would not benefit Bruce, Mica, Echo, Luke, and Zechariah. Therefore, we hold that the trial court did not err in determining that Frances could not transfer Trust assets to herself.

11.    Finding of Fact 18

Wright challenges finding of fact 18, which states, "From the time of Gordon Sales death, the corpus of the Trust should have remained in the Trust." CP at 13.

Here, whether or not after the death of Gordon the corpus of the Trust should have remained in the Trust is a determination of the legal effect of the language of the Abstract and thus is a conclusion of law. Therefore, we review the trial court's determination that from the time of Gordon's death, the corpus of the Trust should have remained in the Trust as a conclusion of law. *See Goodeill,* 191 Wn. App. at 99.

Here, as discussed above, Frances had authority to transfer Trust property, as long as Frances did so in accordance with the purpose of the Trust. The Trust was created to benefit Bruce, Mica, Echo, Luke, and Zechariah. And, as discussed above, the Trust became irrevocable upon Gordon's death.

Based on the language of the Abstract, Bruce, Mica, Echo, Luke, and Zechariah would benefit from the Trust by ultimately receiving the Trust assets or corpus. If Frances removed the Trust assets, Bruce, Mica, Echo, Luke, and Zechariah would not benefit. And Frances could not revoke the Trust after Gordon's death. Thus, from the time of Gordon's death, the Trust assets should have remained in the Trust. Therefore, we hold that the trial court did not err.

12. Finding of Fact 19

Wright challenges finding of fact 19, which states, "The findings set forth herein is not a full adjudication of all matters before this Court in the above entitled action, but it is a full and final adjudication regarding the formation, continuation, and terms of the Trust." CP at 13. Wright argues, "You do not know what the many missing terms actually say. These findings are all conjecture and made up by the Court based upon [Sales]'s arguments and wishful thinking to allow [Sales] to recover something from [Wright] even though Frances left nothing to [Sales]." Br. of App. at 29.

Here, the missing terms are not relevant as to whether or not the trial court's findings were a full adjudication of all matters before it or if they were only a full and final adjudication regarding the formation, continuation, and terms of the Trust. Therefore, Wright's argument lacks merit.

13.     Finding of Fact 20

Wright challenges finding of fact 20, which states, "No future determination or finding regarding those matters that remain at issue will have effect on those findings set forth herein." CP at 13. Wright argues that "[i]t is doubtful a retiring Judge can tie the hands of any future Judge who takes over the case."[9] Br. of App. at 29.

Wright fails to provide any legal authority for this argument. *See* RAP 10.3(a)(6); *DeHeer*, 60 Wn.2d at 126. Other than Wright's bare assertion that the finding appears to insulate the ruling from a new trial judge, Wright fails to show how the trial court erred.[10]

14.     Conclusions of Law 2(c) through 2(e)

    a.     Conclusion of Law 2(c)

Wright argues that "2(c) is trying to say only the named Remaindermen Beneficiaries had an interest in the Trust, which ignores the Grantors' ability to revoke or amend the Trust during their lifetimes, and the fact [that] Frances had the ability to freely transfer property out of [the] Trust." Br. of App. at 30.

---

[9] Whether or not any future determination or finding regarding remaining matters in this case will have effect on the current findings is a determination of the legal effect of the trial court's decision on a future court's decision making ability in an ongoing matter. Thus, we review finding of fact 20 as a conclusion of law. *See Goodeill*, 191 Wn. App. at 99.

[10] While we hold that Wright fails to show how the trial court erred, we do, however, question the ability of a trial court judge to bind the future decisions of another trial court judge in an ongoing matter.

RCW 11.98.011(1)(c) states that the trust must have a definite beneficiary. RCW 11.98.011(2) states that a "beneficiary is definite if the beneficiary can be ascertained now or in the future."

Here, conclusion of law 2(c) stated that the Abstract met a requirement of a trust by naming defined beneficiaries. The trial court's finding of fact 8 states that paragraph 1.2 of the Abstract of Trust defined specific beneficiaries of the Trust. These beneficiaries are listed by name and address as Bruce, Mica, Echo, Luke, and Zechariah. Thus, the beneficiaries are ascertainable. Contrary to Wright's argument, RCW 11.98.011(1)(c) specifically defines definite beneficiaries and does not state that beneficiaries are only definite if the Trust cannot be amended or revoked. Therefore, the trial court did not err in concluding that the Abstract met a requirement of a trust by naming defined beneficiaries.

b. Conclusion of Law 2(d)

Wright argues that that Conclusion 2(d) "appears to be limiting the Trustee's powers over Trust Assets." Br. of App. at 30.

As outlined above, RCW 11.98.011(d) states that the trustee must have duties to perform.

Here, conclusion of law 2(d) stated that the Abstract met a requirement of a trust by assigning duties for the Trustee to perform. The trial court's finding of fact 9 states that the Abstract generally contains the duties a Trustee is to perform for the trust. This finding supports the conclusion that the Grantors assigned duties for the Trustee of the Trust to perform. Therefore, the trial court did not err in concluding that the Abstract met a requirement of a trust by assigning duties for the Trustee to perform.

c.      Conclusion of Law 2(e)

Wright argues that Conclusion 2(e) "ignores the fact that Grantors' reserved the right to amend or revoke the Trust. Such authority makes them the Sole Beneficiaries and Trustees during their lifetimes or while they were still ca[p]able of managing their own affairs." Br. of App. at 31.

RCW 11.98.011(e) does not permit the same person to be the sole trustee and sole beneficiary.

Here, the trial court concluded that the Abstract met a requirement of a trust by not identifying one or more individuals as both the sole Trustees and the sole beneficiaries of the Trust. The trial court's finding of fact 10 states that the Abstract of Trust does not identify one or more individuals as both sole Trustees and sole beneficiaries of the Trust. This finding supports the conclusion that the Abstract met a requirement of a trust bynot identifying one or more individuals as both the sole Trustees and the sole beneficiaries of the Trust.

Wright also argues that the fact that the Grantors reserved the right to amend or revoke the trust made them the sole Trustees and beneficiaries of the trust. But Wright fails to provide any legal authority for this argument. *See* RAP 10.3(a)(6); *DeHeer*, 60 Wn.2d at 126. Other than Wright's bare assertion that the fact that the grantors reserved the right to amend or revoke the trust made them the sole beneficiaries and Trustees of the Trust, Wright fails to show that the same individuals were not the sole Trustee and sole beneficiary. Therefore, Wright's challenge fails.

15.    Conclusion of Law 6

Wright challenges conclusion of law 6, which states, "The Abstract of Trust sets forth the terms of the Trust and shall be enforceable against the parties." CP at 14. Wright argues that "[t]o

have so many missing terms, including the complete dispositive scheme, simply makes this conclusion without basis." Br. of App. at 32.

Here, as discussed above, the trial court's authority under TEDRA and the plain language of the Abstract allowed the trial court to interpret the Abstract of the Trust in place of the Trust Agreement. Therefore, the trial court did not err in its conclusion of law 6.

ATTORNEY FEES ON APPEAL

We may grant an award of reasonable attorney fees on appeal to a party that requests it in its opening brief, as long as applicable law provides for such an award. RAP 18.1. RCW 11.96A.150, authorizing reasonable attorney fees in TEDRA actions, applies not only to trial courts, but also to "any court on an appeal." *In re Estate of Mower*, 193 Wn. App. 706, 729, 374 P.3d 180, *review denied*, (2016) (quoting RCW 11.94A.150(1)). Therefore, we have the discretion to award reasonable attorney fees in trust disputes.

We may order that an attorney fees award be paid by "any party to the proceedings" or "the assets of the estate or trust involved in the proceedings" in any manner and amount we deem equitable. RCW 11.96A.150(1)(a), (b); *Estate of Mower*, 193 Wn. App. at 729. In exercising our discretion, we may consider whatever factors we deem appropriate. RCW 11.96A.150(1); *Estate of Mower*, 193 Wn. App. at 729.

A.     WRIGHT'S REQUEST

Wright argues in their opening brief that they should be awarded reasonable attorney's fees and costs for appeal pursuant to RCW 11.96A.150. Because we hold that the trial court did not err in its findings of fact and conclusions of law and partial order on merits, Wright is not the

prevailing party. Therefore, we decline awarding Wright reasonable attorney fees and costs incurred on appeal.

B.     SALES' REQUEST

Sales argues in their opening brief that we should award them attorney fees and costs "against the Trust itself and [Wright], but remand to the trial court to determine the amount awarded, and the parties against whom debt should be allocated, in context of those issues that remain un-litigated." Br. of Resp. at 30-31.

Because we hold that the trial court did not err in its findings of fact and conclusions of law and partial order on merits, Sales is the prevailing party. Therefore, we award to Sales their reasonable attorney fees and costs incurred on appeal pursuant to RAP 18.1 and RCW 11.96A.150. Under RAP 18.1(f), the commissioner of our court will determine the amount of reasonable attorney fees and costs incurred on appeal. The amount shall be paid out of the Trust assets.

CONCLUSION

We conclude that the trial court did not err by interpreting the Abstract of Trust to determine the terms of a missing Trust Agreement, did not use a certification under RCW 11.98.075 to determine the terms of the missing Trust, did not err by re-creating the terms of the missing Trust by interpreting the Abstract, and did not err in the challenged findings of fact and conclusions of law. Accordingly, we affirm the trial court's Findings of Fact and Conclusions of Law and Partial Order on Merits.

No. 52630-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Glasgow, J.

_____
Cruser, J.